## TOWNSEND, GRACE & Co. *vs.* JACOB EPSTEIN.

*Highways and Streets—Right of Abutting Owners to Light and Air From the Street—Injunction to Restrain the Erection of a Covered Way Across a Street—Nuisance—Invalidity of Municipal Ordinance Giving Private Right to Obstruct a Street—Estoppel.*

The owner of a lot abutting on a city street has an easement in the light and air afforded by such street, and is entitled to an injunction to prevent the erection of a structure across the street which materially diminishes the supply of light and air to his lot, although such structure is authorized by a municipal ordinance, because such an ordinance, made for the benefit of an individual, is invalid.

The control over streets which is vested in the Mayor and City Council of Baltimore can lawfully be exercised only for the benefit of the public, and the municipality has no power to authorize an individual, for his own interest, to obstruct the light and air afforded by a street to the property of abutting owners.

Plaintiffs are the owners of a large building used as a manufactory, running back to a narrow street with windows opening thereon. Defendant owns a building about thirty feet distant from plaintiffs' on the same side of said street, and also buildings opposite thereto on the other side of the street. Under the authority conferred by a municipal ordinance, defendant constructed a tunnel under the street and began the erection of a structure across the street beginning about seventeen feet above the ground, and three stories in heighth to connect his two buildings. Plaintiffs filed a bill for an injunction alleging irreparable injury to their lot by the obstruction of the light and air caused by the defendant's structure. *Held*,

1st. That the plaintiffs, as abutting owners, are entitled to the enjoyment of light and air from the public highway ; that the defendant's structure materially interferes with this right and constitutes a nuisance ; that the injury suffered by the plaintiffs is different in kind from that suffered by the community generally and entitles them to relief by injunction, and they are not merely remitted to a right to sue for consequential damages.

2nd. That the municipal ordinance authorizing the defendant to erect the superstructure was passed for his benefit and not for that of the public and is consequently invalid.

3rd. That the plaintiffs are not estopped to ask for relief either because they did not object to the passage of the ordinance or because they did not make known their objections until the superstructure was nearly completed.

4th. That since the plaintiffs have not been injured by the construction of the tunnel under the street between defendant's buildings, they are not entitled to prevent its maintenance.

Appeal from a decree of the Circuit Court Number 2, of Baltimore City (STOCKBRIDGE, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*George R. Willis* and *Joseph C. France* (with whom was *Luther M. Reynolds* on the brief), for the appellants.

1. Where, by the terms of its dedication, a street is to re-

main "a public highway for all purposes whatever," the abutting owner takes something more than the easements of passage, ingress and egress. If his neighbors on each side can acquire the opposite properties, and shut him in by superstructures similar to the appellee's then, as to such abutting owner the street has ceased to be a street and is no longer "open." Independent of the ordinance, the appellee can have no higher rights than Howard, and he, having sold a lot binding on a highway, could not afterwards derogate from his grant by turning any part of the highway into a low or covered way.

"But an owner of land abutting on a street has an easement in and over the street; and such easement includes a right to light and air as well as the right to travel upon the street." (*Dillon Municipal Corporations*, 4 ed., sec. 734.) "The rights of an abutting owner * * * for access, light and air, are peculiar and distinct from the easement in the public generally." (*Edmison* v. *Lowry*, 17 L. R. A. 275; *Williamette* v. *Oregon Railway*, 29 L. R. A. 88; *Salisbury* v. *Andrews*, 128 Mass. 336.) And while this Court (*Garrett's case*, 79 Md.) has decided (*contra* the New York doctrine) that interference with access, light and air, for an *authorized public purpose*, constitute an injury and not a taking, it has never been intimated that such interference, for an unauthorized private purpose was *damnum*, but not *injuria*. "The adjoining owner" if the fee is in the city or in some third persons "cannot maintain an action for injuries to the soil, but he nevertheless has a remedy for any special injury to his rights by the unauthorized acts of others." (*Chesapeake, &c., Co.,* v. *Mackenzie*, 74 Md. 48, 49, and compare *Janes* v. *Jenkins*, 34 Md. 1.)

2. The validity of the ordinance. It is provided by the City Charter, section 7: "The title of the Mayor and City Council of Baltimore in and to * * * its streets and alleys * * * is hereby declared inalienable;" section 8: The Mayor and City Council of Baltimore may grant for a limited time * * * specific franchises or rights in any of the public property or places mentioned in the preceeding section;" provided that such grant is in conformity with the re-

quirements of this Article and that the terms and conditions of the grant shall have first been authorized and set forth in an ordinance duly passed by the city. Every such grant shall specifically set forth and define the nature, extent and duration of the franchise or right thereby granted  *  *  *  and notwithstanding any such grant, the Mayor and City Council of Baltimore shall at all times have and retain the power and right to reasonably regulate in the public interest, the exercise of the franchise or right so granted ; " section 9 : " No franchise or right in relation to any highway, street or alley either on, above or below the surface  *  *  *  shall be granted  *  *  * for more than twenty-five years.   *  *  *  Every such grant shall make provision by way of forfeiture or otherwise of the grant  *  *  *  to secure efficiency of public service at reasonable rates. "   Section 10 and 37 provide for and require an ordinance and advertising, but, except applications to use the streets for " bow or bay windows, hitching posts, areaways, steps, planting of trees, storm doors, drains and drain pipes, or such other temporary and similar uses," as to which the Board of Estimates is vested with discretionary powers as to terms and amounts, without ordinance and advertisement.

Under these provisions of the charter, was passed the ordinance in question, "for the convenience of the public having business with Jacob Epstein. "   Concerning which the appellants respectfully submit : (A) that the ordinance does not conform to the requirements of the charter ; it does not "specifically set forth and define the extent" of the franchise ; under it, the appellee may erect one or more superstructures of one or more stories and they may connect any or all of his three buildings on the south side of Garrett street, with any "proposed building or improvements" on the north side.   (B) That the provisions of the charter do not contemplate such a franchise as that granted by the ordinance.   They are, on the face of them, applicable only to such uses of the street as are incident to public service or convenience.   "*Every grant* of such franchise shall make provision to secure efficiency of public service," (section 9, *supra*.) (C) That if the ordinance does conform

to the charter and the charter does contemplate such a franchise as was granted to the appellee, it must follow "that neither the rights of the owner of the reversion, nor those of an abutter upon a street are abridged by the statute ; and that in so far as that statute attempts or was intended to effect that result, it is nugatory and inoperative." (*Mackenzie's case*, 74 Md. page 49.)

No one disputes that for every public purpose, the control of the city over its streets is unlimited. The grade may be changed ; anything that is a legitimate municipal agency may be placed on, under or above the surface, and in the absence of negligence, any consequential damage is loss without wrong. (*O'Brien* v. *Belt Rwy.*, 74 Md. 376.) So also the city may, under the State, grant the use of the street to a public-service corporation ; nor is the owner of the reversion entitled to compensation, as for a "taking" unless the use is one not implied in the dedication, an additional servitude. (*Hiss* v. *Rwy.*, 52 Md. 251.) So, all privileges reasonably incidental to the enjoyment of abutting property *as such*, such as steps, porches, areaways, are part of the use of a street as a street. (*Garrett*, v. *Janes*, 65 Md. 260.) But for a *private* purpose, the city cannot, even by condemnation, deprive an abutting owner of his easement in the street, even where he has no title to it. "It is recognized * * * that abutting owners have interests in the street or alley which are valuable and that these cannot be taken for public use without compensation. It is believed that no one will contend that they can be taken for private use on any terms whatsoever. Certainly such a doctrine has never at any time, found any toleration in this State." (*Van Witzen* v. *Gutman* 79 Md. 409.) Unless there is some legal difference between the rights of Mrs. Van Witzen *as abutting owner* in Jew alley, and the right of the appellants in Garrett street, her case is decisive of this.

The charter cannot confer on the city and the city cannot give the appellee any rights in Garrett street, in excess of those received by the State under the dedication of 1782. And whether the title of the State be regarded as a base-fee

or a fee-simple in trust, the result is the same. "The municipal corporation took the title in trust, impliedly if not expressly designated by the acts of the party in making the dedication. They could not nor could the State convey to the respondents any right to disregard the trust or to appropriate the premises to any purpose which would render valueless the adjoining real estate of the complainant." (*St. Paul* v. *Schurmeirer*, 7 Wall. 272.) "It is not competent for the city to defeat the primary purposes for which streets were dedicated to public use." (*Lake Rolaud Co.* v. *Baltimore*, 77 Md. 352.) "Once a highway, always a highway" is an old maxim and so far as concerns the rights of abutters  *  *  *  the maxim still holds good." (*Elliott on Streets*, section 658) and see: *Cooley Constitutional Limitations*, page 682, note 3, and *Field* v. *Barling*, (Illinois) 24 L. R. A. 406, in which the facts are almost identical with those presented by this appeal.

3. As to the form of relief. The learned Judge below distinguished this case from *Van Witzen* v. *Gutman* (79 Md. 409,) because (apparently) he conceived there was a legal difference between an abutting owner's right of passage over a street, and his right to receive light and air from it; then he decided on the authority of *Garrett's case*, also in 79 Md., that, conceding deprivation of light and air, no injunction could issue because this would not amount to "taking." The appellants submit that in *Van Witzen's case* this Court decided, not that the closing of Jew alley was unlawful because subversive of its use as a highway; but because it was taking an abutting owner's easement for a private purpose. Moreover, the appellants did not claim below that an interference with the access of light and air was "taking" of their property without prior compensation paid or tendered; but they did and do claim that even if the appellee, had tendered its full value, his position would be no better; Epstein is not a public-service corporation. The reasons for the decision in *Garrett's case* have no application here; the construction of the elevated structure on North street could not be enjoined as a nuisance, because it was a lawfully authorized use of the street; it could

not be enjoined on the ground that no compensation had been tendered, because there was no taking of Mr. Garrett's vacant lot ; it could not be enjoined on the ground that a jury could only give damages to the date of bringing the suit, because the statute provided for full compensation, and thereby made the remedy at law adequate.    In *Mackenzie's case,* 74 Md., where the statute provided that the Telephone Company might elect to have included in the verdict "damages for allowing the said fixtures permanently to continue," this Court said (page 49) "that if the recovery should be limited" at the company's instance to the period of suit brought, making further suits necessary, "an injunction could be procured to prevent a continuance of the interference."    So in the case at bar, no verdict would be adequate relief ; and if the structure is unauthorized, it is a nuisance *because* the injury is continuing and permanent ; it "is material, operates daily * * * to diminish the use" of the appellants' property.    (*White* v. *Flannigan,* 2 Md. 545 ; *Hamilton* v. *Whitridge,* 11 Md. 128 ; *Fairfield Co.* v. *Baltimore,* 87 Md. 361, where even an authorized use by the city of its own property was enjoined as a nuisance.

4. As to estoppel.    It is not believed that the appellee will contend that the appellants have mislead him to his hurt, much less that they are estopped to deny his right.    It is true that they waited to see whether there was to be "a superstructure" or "superstructures," one story or more ; on this point the ordinance gave no information ; nor could the appellants tell in advance whether their injury was going to be sufficient to complain of.    In no view of the facts is there any case of estoppel made out.    (*Schaidt* v. *Blaul,* 66 Md. 142.)

*Wm. Pinkney Whyte* and *Isaac Lobe Straus* (with whom was *Louis E. Rosenbaum* on the brief), for the appellee.

1. Garrett street being one of the public highways of Baltimore City, is subject to the complete control of the Mayor and City Council of Baltimore, which control is limited only by constitutional inhibitions and attended with the duty of preserving its primary and essential character as a highway.

*Baltimore City* v. *Lake Roland Co.*, *77* Md. 352; *Postal Co.* v. *Baltimore*, *79* Md. 510.

Structures which sometimes are made to encroach upon the use of the streets, are allowed under some circumstances. The Legislature, by virtue of its general control over public streets and highways, has power to authorize structures in the streets for the convenience of business, which without such authority and under the common law would be held to be encroachments and obstructions. This power it may delegate to the governing body in a municipal corporation. *Hoey* v. *Gilroy, et al.*, 129 N. Y. 132. Acting upon this recognized power, the city has from time to time granted to individuals the franchise or privilege of building such superstructures over alleys or narrow streets as do not obstruct the highways or impair the primary object for which they were dedicated. Thus the owners of the Mount Vernon Hotel on Monument street, were authorized to bridge the alley in the rear of their main hotel to connect with a building on Cathedral street. So, on this very Garrett street, the owners of the Howard House were allowed to throw a structure over the street. *Resolution 6 of 1853*, M. & C. C. B. In like manner, the alley in the rear of the residence of the late William T. Walters was bridged, so as to give access to the picture and art gallery on the south side of this alley. The power has not heretofore been challenged.

2. It is perfectly plain from the evidence, and indeed fully admitted by the plaintiffs, that the bridge in no way interferes with the use of Garrett street as a highway, either by the public or by the plaintiffs themselves. In this respect this case differs entirely from the case of *Van Witzen* v. *Gutman*, 79 Md. 409. If the bridge or overhead passageway constructed by the defendant across Garrett street destroys or interferes with the use of Garrett street by the public as a highway, it would not be within the power of the Mayor and City Council of Baltimore to authorize such a construction ; but if the bridge is not destructive of the use of said street by the public as a highway, the grant is clearly within the powers of municipality.

The evidence shows that the "Superstructure" is an enclosed bridge crossing Garrett street *eighteen feet above the surface.* The ordinance authorizing its construction provides "that the bottom of the lowest of said superstructure shall in order to permit the free passage of vehicles of every description through said Garrett street or alley, be not less than sixteen feet from the service of the center of said Garrett street or alley."

It is thoroughly settled by the decisions of the Courts that the primary, essential and paramount purpose of a street or highway is that of passage or travel.   This Court has repeatedly expressed that view.   *Lake Rol. Co.* v. *M. & C. C. of Balto.,* 77 Md. 379; *Garrett* v. *Lake Rol. Co.,* 77 Md. 291; *Schaidt* v. *Blaul,* 66 Md. 147; *Van Witzen* v. *Gutman,* 79 Md. 408; *White* v. *Flannigan,* 1 Md. 525; *Turner* v. *Holzman,* 54 Md. 148; *Hussey* v. *Ryan,* 64 Md. 426; *Murray* v. *McShane,* 52 Md. 217; *Harrison* v. *Duke of Rutland,* 12 Eng. Rul. Cases, 602; s. c., 1 Q. B. 153, 154; *Hoey* v. *Gilroy,* 129 N. Y. 135, 139, 140; *Gray* v. *Baynard,* 5 Del. Ch. 502–5; *Williams* v. *Ry. Co.,* 44 N. Y. 97; *Town of Spencer* v. *Andrew,* 82 Iowa, 14; *Iron Mt. Co.* v. *Bingham,* 4 L. R. A. 622.

The difference between this case and the case of *Van Witzen* v. *Gutman,* 79 Md. 409, is radical.   It is only necessary in this respect to call the attention of the Court to the fact that in the latter case the attempt was to utterly close up and destroy the alley in question, as a thoroughfare or passageway for the plaintiffs and the public as well.   It was this total annihilation of the alley over which both the public and the plaintiff had the right of passage and travel which this Court refused to allow.   In the case at bar all the uses of Garrett street as a street are fully and strictly preserved.

3. The construction and maintenance of the superstructure do not constitute a taking of property.   This Court has definitely settled the proposition that interference with easements of light and air from a street does not constitute a "taking" of the property of one who is thereby disturbed in or deprived of his enjoyment of those easements. . *Cumber-*

*land* v. *Willson*, 50 Md. 138; *O'Brien* v. *Belt R. Co.*, 74 Md. 363; *Garrett* v. *Lake Roland Co.*, 79 Md. 77.

4. Interference with prospect, light and air is no ground for injunction in this State. The only injury or damage which the plaintiffs seriously claim they have suffered and which alone they offered any testimony at all to establish is an alleged slight diminution of the light obtained by them from Garrett street. This diminution they sought to prove required the earlier lighting of their lamps on some of the floors of their premises. Assuming that the superstructure of the defendant has caused this diminution of the plaintiffs' light—an assumption which, as is shown hereafter, the evidence overwhelmingly rebuts—it is submitted that it has been decided in this State that such an interference with the plaintiffs' light gives him no right to an injunction. On this point the cases of *Garrett* v. *Janes*, 65 Md. 260; *Garrett* v. *Lake Roland Railway Company*, 79 Md. 282, and *Cherry* v. *Stein*, 11 Md. 1, are conclusive, and, unless this Court resolves to reverse its decisions in those cases, the contention of the appellants must be rejected.

5. The appellants are not entitled to a mandatory injunction requiring the demolition of valuable property unless the proof shows clearly that extreme or very serious damage will ensue from such an injunction being withheld. The appellants' proof, taken alone, shows that the injury to them is at most only trivial. It must be a strong case of trespass going to the destruction of the inheritance, or the mischief be remediless to entitle the party to an injunction, and the writ is only used to protect rights which are clear or at least free from reasonable doubt. The Court will never grant an injunction to restrain a mere trespass, where the threatened injury is not irreparable and destructive of the plaintiff's estate, but is or will be susceptible of perfect pecuniary compensation, and for which the party may obtain adequate satisfaction in the ordinary course of law. *Cherry* v. *Stein*, 11 Md. 27; *Whalen* v. *Delashmutt*, 59 Md. 253; *Schaidt* v. *Blaul*, 66 Md. 147; *Fort* v. *Groves*, 29 Md. 188, 193-4; *Amelung* v. *Seekamp*, 9 G. &

J. 472; *Jerome* v. *Ross*, 7 Johns Ch. 315.  Even in those juris-
dictions where an injunction will be granted to prevent an ob-
struction to ancient lights the well-settled rule is that a Court
of Chancery will not interfere unless the light is so obstructed
as to render the building to a material extent less suitable for
the business conducted in it, but will leave the person ag-
grieved to his damages at law; the foundation of the jurisdic-
tion being only such injury to property which renders it in a
material and substantial degree unsuitable for the purposes to
which it is applied.  1 *High Injunctions*, sec. 861.  *Kino* v.
*Rudkin*, 6 Ch. Div. 160; *Druell* v. *Pritchard*, L. R. 1 Ch. 244;
*Brewery Co.* v. *Tenant*, L. R. 9 Ch. 212; *Jackson* v. *Duke of
Newcastle.* 33 L. J. Ch. 698; *Wells* v. *Ody*, 7 C. & P. 410.

6. The testimony in the cause overwhelmingly rebuts the
appellants' charge that the superstructure diminishes the light
which they receive from Garrett street.

JONES, J., delivered the opinion of the Court.

This case presents questions of more than usual interest and
importance, but we think principles enunciated in compara-
tively recent decisions of this Court must so far control its
decision as to render the solution of these questions free from
difficulty.  The facts giving rise to this litigation are as fol-
lows.  The appellants (who were plaintiffs below) are the
owners in fee of a lot of ground fronting about forty-nine feet
on the south side of Fayette street in the city of Baltimore,
and running southerly, with uneven width, back to and abut-
ting about sixty-eight feet on a small street known as Garrett
street, which runs east and west parallel with Fayette street
to the north of it and with Baltimore street to the south of it.
This lot is occupied by a large building extending from street
to street which is used by the appellants as a factory for the
manufacture of straw goods.  In this building looking out
upon Garrett street are a number of windows for the admission
of light to the different floors thereof.

The appellee is the lessee and occupant of three parcels of
ground with the buildings thereon fronting on the north side

of Baltimore street and extending northerly to Garrett street, and is conducting upon these premises a large merchandising business. For the purpose of this business he has recently purchased a lot of ground lying between and abutting on Fayette and Garrett streets, fronting on the south side of the former and extending back to the north side of the latter street, and situated immediately opposite to where his premises, lying between Baltimore and Garrett streets, abut on the latter street, and to the west of the premises of the appellants. Upon this lot he proposes to erect a six-story warehouse and to establish communication between that and the premises and buildings occupied by him on Baltimore street by a tunnel under and a structure above and across Garrett street. The tunnel has been constructed. The structure across Garrett street has also been nearly completed. This is an enclosed structure, about thirty-three feet to the west of the premises of the appellants, and is about seventeen feet above the surface of the street. It is now connected with the building of the appellee which fronts on Baltimore street and extends back to the south side of Garrett street; is thirty feet in width, running with the latter street; and is built three and a half stories high across it to where this structure is intended to be connected on its north side with the warehouse which the appellee proposes to there erect.

Before proceeding to construct this tunnel or to erect this connecting structure, the appellee applied for and procured from the Mayor and City Council of Baltimore, after complying with all formal requirements, the passage of an ordinance purporting to grant to him the privilege and right, under regulations therein prescribed, to construct such tunnel under Garrett street and to erect an enclosed superstructure across said street to " connect one or more floors of the premises of Jacob Epstein on West Baltimore street * * with the corresponding floor or floors of the building or improvements to be erected by him on the south side of West Fayette street and the north side of West Garrett street." This ordinance recited that this right was granted " for the convenience of the public having business with Jacob Epstein."

The appellants began this suit by filing a bill in equity charging in substance that this ordinance in attempting to grant to the appellee the right to build a tunnel under and a structure over Garrett street as therein provided is invalid and void ; and that the attempt made by the appellee to exercise such right is an invasion of their rights as abutting lot owners on said street. They pray that the said ordinance shall be declared invalid and inoperative and that the appellee be perpetually enjoined from digging the tunnel and from erecting the superstructure as proposed and that he be required to restore the earth removed from the tunnel and to take down and remove such part of said superstructure as had already been erected. The trial Court refused the relief prayed for by the appellants and decreed that their bill be dismissed.

Garrett street is a public street of the City of Baltimore and as such subject to the same control of the municipality as it has over all of its streets and highways. The rights of the parties to this controversy are therefore to be determined from their relation to this street as a public street or highway of the city. This being now fully conceded, and if not conceded being incontrovertibly shown, we need not undertake to trace the history of this street with a view to defining its *status* as involved in the present contention. The appellants in their bill based their claim to relief upon a different theory, as to this *status*, which, in the brief of their counsel, is practically abandoned, and in view of the proofs in the case properly so, as their rights depend upon the conditions actually existing. Besides this, the appellants and appellee as lot holders abutting on this street claim under the same source of title and to this same source is due the dedication of the street in question, among others, as a highway to "be so deemed and taken to all intents and purposes whatever."

It would seem, therefore, that the appellants as against the appellee, can claim no greater rights in or over this street than such as belong to both parties as abutting owners upon this highway. The question, therefore, is, do these rights entitle the appellants to the relief prayed for in their bill against the

acts of the appellee in respect to the street in question which are therein complained of. In determining this we are to inquire what are the rights of the appellants? Have they been injured in respect to those rights in such manner as to entitle them to a remedy against the appellee? If so, are they entitled to the particular remedy which they have sought in this proceeding? That owners of lots or ground abutting upon the public streets have rights in the easement, which are valuable and are in addition to those which they have in common with the general public is recognized in our statute law which confers upon the City of Baltimore the power for laying out and closing up streets, by providing for compensation to such owners upon the closing of an adjacent street. Act 1898, chap. 123, sec. 6, sub-title "Streets, Bridges and Highways," the same provision being formerly contained in Code, Art. 4, sec. 806, Public Local Laws.

Such right of the abutting owner thus recognized, was enforced by this Court in the case of *Van Witzen et al.* v. *Gutman,* 79 Md. 405, where it was said: "It is recognized by the statute that abutting owners have interests in the street or alley which are valuable, and that these cannot be taken for the public use without compensation. It is believed that no one will contend that they can be taken for private use on any terms whatsoever. Certainly such a doctrine has never at any time found any toleration in this State." In the case just referred to relief was sought against the obstruction of the public alley, there in question, so as to cut off the complaining lot holders from ingress and egress from and to another public street and to destroy the right of passage out and over said alley to this street. The obstruction of the alley was attempted by proceedings under the authority of an ordinance of the Mayor and City Council of Baltimore, providing for the closing of the alley. This Court held that the use for which the alley was authorized to be closed was not a public, but a private use and that therefore the ordinance authorizing the closing of it was void upon the ground as appears from the quotation just made that the abutting lot holders who were

there seeking relief had valuable rights in the easement of the alley and could not be deprived, against their consent, of these rights for any but a public purpose and then only with compensation.

Now this valuable property right in the public street which this Court upheld in the case just referred to embraces something more than the mere right of passage over the surface of the street which was the right more directly involved in that case. The abutting lot holder has the right to the enjoyment of the light and air which the highway affords.   To deprive him of this right would be to impair, or it might be, to destroy the comfort, enjoyment or use to be derived from the easement to which he is entitled ;  and we find this recognized by very high authority.   In 2 *Dillon on Mun. Corp.* (4th ed.), sec. 712, it is said, "there is a large class of cases in which no recovery can be had for mere consequential injuries to adjacent property from the construction of public improvements in the streets, towns and cities, the lot owner holding subject to the right of the public to use the streets for any purpose consistent with the legitimate uses for which they were dedicated or acquired ; but *lot owners have a peculiar interest in the adjacent street*, viz., easements of *access, light* and *air*, which are property rights, and as such are as inviolable as the property in the lots themselves ;  and they may recover from the company making such improvements such damages as they may sustain by injuries to or invasions of such easements."   Again in the case of *Field* v. *Barling* (149 Illinois, 556), 24 L. R. A. 406–9, the Court said, "it will not be necessary to cite authorities in support of the proposition that a private individual cannot appropriate to his own exclusive use a portion of the surface of a street dedicated to the public use.   *   *   *   The dedication of the strip of land for a public street embraced not only the surface of the ground, but the light and air above, and an individual has no more right to obstruct the light and air above the street than he has to obstruct the surface of the soil."

The case just cited is peculiarly apt here because it deals with facts and conditions very similar to those presented by

the case at bar. We may also refer to the case of *Barnett* v. *Johnson*, 15 N. J. Eq. 481–7–8, in which the Court discusses the question whether the Morris Canal was a public highway, which being determined affirmatively, the Court in the course of discussing the further question as to the rights of an abutting property owner in respect to light and air from this highway says, "there are * * two classes of rights, originating in necessity and in the exigencies of human affairs, springing up coeval with every public highway and which are recognized and enforced by the common law of all civilized nations. The first relates to the public passage, the second, subordinate to the first, but equally perfect and scarcely less important, relates to the adjoining owners. Among the latter is that of *receiving from the public highway light and air*"—and again in the course of the opinion occurs this emphatic language, "where a strip of land is declared a public highway the adjoining owner has a right to light and air from it. The column of light and air above the road-bed whether of land or water is as much a part of the highway as the road-bed itself."

It is thus seen that the right of the abutting owner to light and air from a public highway as part and parcel of the easement is distinctly recognized in the authorities when such right has been drawn in question and it rests upon sound and obvious reason. Recognition of this right is not all at variance with the decisions, of this and other Courts of this country in regard to the doctrine of ancient lights, which hold that such doctrine is unsuited to conditions here. The case of *Cherry* v. *Stein*, 11 Md. 1, cited and relied upon by the counsel for the appellee is an illustration of these cases. The doctrine of ancient lights that they repudiate involves an abridgment of the use which an owner can make of his own property. It puts upon the property of one a servitude in favor of another. This is not the nature of the right to light and air from a highway which belongs to an abutting owner as part of the easement. This right to light and air is the distinct right of every abutting owner; and in claiming protection for it such owner is not imposing a servitude upon his neighbor's property for

his benefit; but is only asserting his equal right with his neighbor to the enjoyment of an easement common to them both.

· Nor is there anything, as counsel for appellee insist, in the case of *Garrett* v. *Janes*, 65 Md. 260, in denial of the right we are here considering. The structure complained of in that case as interfering with the light and air from the street was erected under the authority of an Act of Assembly and an ordinance in pursuance thereof which extended and secured to all persons alike who resided within the limits designated in the ordinance the right to erect, under regulations prescribed, "steps, porticos, or porches or other architectural ornaments to houses fronting on Mount Vernon Place." This was a privilege in the interest of the general public and tending to the general comfort and enjoyment of the homes in the district to which the ordinance applied. The Court found that the structure complained of was one of a kind which the ordinance authorized and was therefore a lawful structure and refused to have it abated as a nuisance which it was claimed to be.

We have seen now the nature and extent of the rights of the appellants in and to the street of the obstruction of which they complain. If the public easement has been improperly and unlawfully obstructed by the appellee, then he has been guilty of creating a nuisance; and if the appellants have suffered therefrom an injury different in kind from and beyond that suffered by the community generally; or special and particular damage resulting to them by reason of the nuisance then they have a right to their private remedy for such injury. *Garitee* v. *M. & C. C. of Balto.*, *et al.*, 53 Md. 422; *Field* v. *Barling*, 149 Ill. 556, *supra*. To discover what injury, if any, the appellants have suffered from the acts of the appellee, and the character of the injury resort must be had to the proof. This does not show that the appellants have suffered or are suffering any injury from the tunnel constructed under the bed of the street in question as has been described. In reference to the superstructure the proof shows that it tends to and does diminish and obstruct the light from

the street to the premises of the appellants. There was evidence upon the part of the appellee tending to contradict this, but the decided preponderance of testimony is with the appellants upon this point. The non-expert witnesses testifying on their behalf testified from actual observation of the conditions, in respect to light, made upon the premises of the appellants where these premises were affected in this particular by the superstructure ; while those testifying on behalf of the appellee made their observations from other points and their evidence was more therefore the expression of opinions formed upon inferences drawn than a statement of actual facts. Expert testimony was offered on the part of the appellee with a view, and tending to show that the superstructure in question could not hinder but rather tended to improve the light to the premises of the appellants. This was opposed by expert testimony upon behalf of the appellants, which was much more satisfactory and much more consistent with common sense and common observation to the effect that such a superstructure as the one in question and so located with respect to appellants' premises necessarily tended to obstruct the access of light to, and to diminish it in, said premises.

It appears therefore that the appellants have suffered injury from the erection of the superstructure complained of. It further appears that this injury is one different in kind and degree from, and in addition to such injury as the general public suffer by reason of the obstruction. This results from the situation of the premises of the appellants with respect to the obstruction, and the nature of the use of these premises and the construction of the part thereof abutting on Garrett street. The proof shows that in the part thus abutting there are many windows as to some of which, in the lower floors of the building, there is an entire dependence for light, upon Garrett street. The premises are used for manufacturing purposes for which a proper supply of light is more of a necessity than a mere matter of comfort or convenience. It is further shown that owing to the diminution of light resulting from the obstruction in question the appellants have been compelled to

resort to an increased supply of artificial light for the purposes of their business.    These considerations would seem to make a distinct difference between the injury to the appellants caused by the obstruction of which they complain as a nuisance, and that suffered by the general public.    It is contended on behalf of the appellee however that though there may result injury and inconvenience to the appellants from the erection and maintenance of the structure in question, the appellants have no cause of action and are without remedy because the structure is a lawful one in that it was authorized by the ordinance of the Mayor and City Council which has already been referred to.

The Corporation, The Mayor and City Council of Baltimore, is invested with the title to and control over the public streets. This control, however, is not an arbitrary control.    The streets and highways are held in trust for the benefit, use, and convenience of the general public.    There are many ways in which the power to control and regulate the use of the streets can be and must be exerted by the municipality to meet the necessities and the convenience of an urban population ; but the exertion of this power must have for its object a public purpose. It is not in accord with the trust upon which the municipality holds the streets, nor with the nature of the control which it has over them to make use of the power and authority with which it is invested in that regard to promote a mere private purpose, to subserve a mere private interest or to subordinate the right of one citizen in the streets, or in a street of the city to the private interest and convenience of any other.    In the case of *Van Witzen* v. *Gutman,* 79 Md. *supra,* this Court held that this could not be done even if compensation were made ; and though done under the guise of serving a public purpose. *A fortiori* it cannot be done *without* compensation.    We are confronted here with the same inquiry that the Court was called upon to make in the case last cited.

Was the ordinance under which the appellee here undertakes to justify the acts complained of passed to subserve a public purpose or does it serve a mere private purpose and private

and individual interests? Upon the face of it it seems to recognize the limitations upon the right and power of the municipality to pass ordinances of this nature by expressing its object to be "*for the convenience of the public* having business with Jacob Epstein." This is a rather thin disguise. It is but another form of saying to promote the private business of Jacob Epstein and his convenience in respect thereto. How does it serve the general public or a public purpose to facilitate Jacob Epstein, at the expense of his neighbors, in attracting customers to, and serving them at his store? Aside from this the proof makes it perfectly clear that only private interests are to be subserved by the privileges obtained under the ordinance in question. The appellee in his testimony says " that he intends to use this superstructure after his Fayette street building is completed as a means of egress and ingress from the Baltimore street premises to his Fayette street premises, *for his customers and his. help on the floor;*" " that if anybody wants to go through there, to use it as a way to go between Baltimore and Fayette streets he *would not object*, but that *he does not intend it for a public thoroughfare.*" This only condenses what sufficiently appears otherwise ; and evidences the absolutely private purpose for which the structure is to exist and the private control that it is to be under. If the municipality can grant a privilege of the character of the one here in controversy it implies a power to practically destroy a street as an open, light, and comfortable highway, and its use for the purposes of residence or business by the abutting owners in total disregard of the rights of such owners. If the privilege be granted to one it cannot be denied to others who may apply for it in like circumstances ; and the grant of such privilege might go to the extent of practically transforming any part of a street from an open highway affording unobstructed passage, light and air into a covered and darkened way. The exercise of such a power as was attempted in the ordinance to which reference has been had cannot receive the sanction of this Court. The ordinance for the reasons assigned is an invalid act and affords to the appellee no bar to the legal redress to which the

appellants are entitled for the injury caused to them by the acts of which they here complain.

It remains now to inquire whether the appellants are entitled to the particular remedy which they have invoked in this case. · It is contended by counsel on behalf of the appellee that this legal redress, if the appellants be entitled to any, can only be by way of a suit or suits at law for consequential damages caused by acts of the appellee which they seek to make the grounds of action. They here invoke a principle that is illustrated and applied in a class of cases of which the case of *Garrett* v. *Lake Roland El. Ry. Co.*, 79 Md. 277, is an example. That principle is applied however in cases where the public street is put to some additional lawful use, a use not inconsistent with its use as a highway and a use intended to further serve the public interest and convenience. In such cases the injured property owner cannot prevent the lawful use to which the street is put, but can only recover damages for any consequent injury. This principle is not applicable however to a case, such as we find this to be, where the injury complained of results from an unlawful and unauthorized use of the street. In such a case there is no reason why the injured party should not have such remedy as may give suitable redress. In this case the appellee is unlawfully obstructing a public street as respects its character as an open highway, and the light and air which as such a highway it affords. The appellants have shown as we have seen that they are injured by the obstruction in such way as to entitle them to redress. The obstruction is a continuing one operating to their annoyance, inconvenience and pecuniary loss from day to day. Though they would be entitled to recover damages at law for the injury and loss to which they are subjected they could not recover for the whole damage past and prospective in one suit but only for damages to the time of suit brought. These damages would be difficult to estimate and in any one case would be comparatively trivial. In seeking redress at law therefore they would be driven to a multiplicity of vexatious and unprofitable suits and continuous litigation. To tell

them that this is the only redress they can have would be to say that all the law can do for them is to aggravate the nuisance from which they are already suffering. "To suppress oppressive and vexatious litigations" is one of the grounds of equity jurisdiction in regard to public nuisances. 2 *Story Eq. Jur.*, sec. 924 ; *Amelung* v. *Seekamp,* 9 Gill & John. 474 ; *Elliott on Roads and Streets* at page 497, speaking of the phrase "irreparable injury" says "it does not necessarily mean as used in the law of injunctions, that the injury is beyond the possibility of compensation in damages nor that it must be very great. And the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a Court of equity should interfere in cases where the nuisance is a continuous one." In the present case to seek redress at law would for the reasons given prove vexatious and oppressive to the appellants and it is entirely apparent from the circumstances of the case that no adequate redress can there be afforded them. They have properly sought redress by injunction to have the nuisance they complain of abated and its future continuance prevented.

The further contention on behalf of the appellee is that the appellants are estopped from maintaining their present suit because of acquiescence on their part in the erection of the structure now complained of or of laches in not sooner making known their objection to the same. This contention is based on the grounds : 1st. That there is evidence that Mr. Townsend one of the appellants when consulted by the appellee in regard to his plans which included the construction of the tunnel under and the strucure across Garrett street gave his assent to the same and even encouraged the appellee to carry them forward ; 2nd. That pending the proceedings for procuring the ordinance to authorize the carrying out of the plans of the appellee, the appellants did not appear to make any objection or offer any suggestion as to the same ; 3rd. They stood by and saw the tunnel completed and the superstructure nearly so before making known the objections they now urge

In regard to the first of these grounds it may be sufficient to say that the evidence fails to clearly establish it.   The appellee testified on his own behalf to the purport which has been indicated as to what said by Mr. Townsend when the appellee sought him in reference to his plans, &c.  Mr. Townsend, however, denies that the conversation was as detailed by the appellee and gives quite a different version of it.   Besides this, Mr. Townsend is only one of the appellants, and if the conversation occurred between him and the appellee, as the appellee states, there is no evidence that he communicated it to his co-appellants and co-owners with him of the abutting property which they occupied, and we may at least express a doubt whether an express acquiesence on his part in the plans of the appellee would bind his partners as respects the interests they had in the property.   As to the second it is not perceived how the failure to object to an ordinance which we find to be invalid and inoperative could give to the ordinance validity or effect or to authorize an act which with or without the ordinance was unlawful and a public nuisance.   As to the third ground the appellants could not complain of injury to themselves until it was ascertained that injury would result to them from the acts of the appellee.   They seem to have been prompt to act when that discovery was made.   Until then they had only the right to object as members of the public and their failure to object in that capacity could not render a public nuisance lawful.   What has been said as to the title of the appellants to relief does not apply to the tunnel since they have shown no injury resulting to them from this construction or maintenance of that.

From the foregoing views it follows that the decree of the Conrt below must be reversed and the cause remanded that a decree may be passed in accordance therewith.

*Decree reversed with costs to the appel-
lants and cause remanded.*

(Decided June 13th, 1901.)