CHISSELL ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 9, October Term, 1949.]

536

*Decided November 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Charles H. Houston,* with whom was *Donald G. Murray* on the brief, for the appellants.

The Court declined to hear argument for the appellee. *Thomas N. Biddison, City Solicitor for Baltimore City,*

and *Hamilton O'Dunne, Assistant City Solicitor* were on the brief for the appellee.

MARKELL, J. delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill for (1) adjudication that Ordinance No. 169, approved March 18, 1948, making Druid Hill Avenue and McCulloh Street one-way streets, is illegal and void and (2) injunction against (a) enforcement of the ordinance and (b) collection of taxes based upon increased assessments in 1947 upon residential properties on McCulloh Street and Druid Hill Avenue, "because of the fraudulent manner in which such increased assessments were made". Plaintiffs sue as citizens, residents and taxpayers who live, and own properties, on Druid Hill Avenue or McCulloh Street.

Making Druid Hill Avenue and McCulloh Street one-way streets was part of the general plan to improve traffic conditions, which has been gradually formulated and carried out over a number of years. The general plan has been carried out previously as to St. Paul and Calvert Streets and subsequently as to Charles and Cathedral Streets and Maryland Avenue. An essential of the general plan and of the particular features mentioned was substitution by Baltimore Transit Company of busses for street cars and changes in its routes. To make Druid Hill Avenue and McCulloh Street more accessible for through traffic it was also necessary to construct a "park boulevard" through the western edge of Druid Hill Park, running along Auchentoroly Terrace and also connecting Druid Hill Avenue and McCulloh Street with Reisterstown Road and Liberty Heights Avenue. In May, 1945 Mr. Nathan L. Smith, then the City's Chief Engineer, made a report on traffic conditions and "present and post-war highway requirements", in which he suggested making Druid Hill Avenue and McCulloh Street one-way streets and construction of the Auchentoroly cut-off. In November, 1945 the Transit

Company, in its "Rider's Digest", explained this plan for these one-way streets and the cut-off. On September 25, 1946 the Commission on City Plan approved the Auchentoroly cut-off for the "future one-way street system", including Druid Hill Avenue and McCulloh Street. On September 30, 1946 the Baltimore Sun published a plat, with an explanatory statement, of the "proposed park boulevard". The plat clearly shows, and the statement explains, the location of the cut-off and the connections with Druid Hill Avenue, McCulloh Street and Reisterstown Road and Liberty Heights Avenue. The contract for the cut-off was advertised in May, 1947 and awarded on June 5th. Work started shortly thereafter and was completed in January, 1948. Ordinance No. 169 was introduced on January 12, 1948, reported March 1st, passed with amendments on March 8th and approved March 18th.

In 1947 the Department of Assessments, in due course, as required by law, revised tax assessments of all property in one of the five districts established to effect revision of all assessments in Baltimore at least once in each five years. Baltimore City Charter, effective May 20, 1947, sec. 53; Code, 1947 Supplement, Art. 81, sec. 175 (8). The district reviewed in 1947 includes Druid Hill Avenue and McCulloh Street. Shortly before October 1, 1947 plaintiffs received notices of increased assessments of their properties for 1948. Within twenty days they might have appealed to the Board of Municipal and Zoning Appeals. Charter (1947), sec. 129. They did not appeal, but say they would have done so if they had known the City was about to enact Ordinance No. 169. Nor did they exercise their right to apply, before July 1, 1948, for reduction of their assessments for 1949. Code, Art. 81, sec. 190. As Judge Mason indicates, even if there were fraud in the 1947 assessments plaintiffs would not be entitled to relief in equity (if at all) except as to 1948 taxes.

Plaintiffs contend that: (1) The City perpetrated a fraud upon them by increasing their tax assessments

without enacting, or disclosing its intention to enact, Ordinance No. 169 before expiration of the period for appeal from the assessments.   (2) The ordinance is void because the action of the City in enacting it is arbitrary, capricious and fraudulent.

Plaintiffs say the City cannot escape responsibility for "concealment" and "fraud" by not letting its left hand know what its right hand is doing.   Application of such a doctrine in the instant case would be quite impracticable and legally unwarranted.   The relation between assessor and taxpayer is not a fiduciary relation which imposes upon the assessor a special duty of disclosure. Moreover, if every assessor had encyclopedic knowledge of the City's past action and its present condition, he could not have told what would be done in the future or when it would be done.   In any event such a guess would not have been material to the question of value on October 1, 1947, the date of finality.   If plaintiffs had appealed, that would have been the issue, not value after enactment of the ordinance.   Market value reflects known facts and informed opinion as to known possibilities.   On October 1, 1947 the possibilities of a one-way ordinance, including the current expenditure of $400,000 on the cut-off, were obvious.   "Inside information", not known to the market, would not have affected market values.   There is no indication that any "inside information" was in fact concealed or withheld by the City. Manifestly, legislative activity of the city government could not be halted for 345 days in each year for fear of affecting reassessed values after expiration of the time for appeal.

Plaintiffs paint, in dark colors but not with clear outlines, a picture of effects of the ordinance upon amount of traffic, noise, vibration, hazard to pedestrians, especially school children, sleep and life on Druid Hill Avenue and McCulloh Street.   They say that, before the ordinance, traffic on these streets was "local traffic * * * of moderate or below moderate volume" and both adult and child pedestrians were "comparatively safe", but

these conditions are now reversed. One witness says that (presumably before the ordinance), "if you go home from Pennsylvania Avenue, it is just like starting out of hell into heaven", but now it would appear that these streets are all places of perpetual torment. These alleged conditions are not reflected in decreased sales prices for properties on these streets. Fortunately, increased hazards to school children are not reflected in actual accidents. In any event, notwithstanding testimony as to hazards to pedestrians, we cannot escape opposing testimony, and the obvious fact, that on a one-way street the pedestrian's chance of survival is increased by decreasing the number of directions from which danger is to be expected. Traffic lights on a one-way street make crossing completely safe for pedestrians, so far as any traffic regulations can do so. If the City fails to furnish sufficient traffic lights, or the police to enforce traffic regulations, (of which there is no evidence), or if individuals violate regulations, resort may be had to the political branches of government or to criminal prosecutions or even to civil or criminal proceedings for official misfeasance, but not to a court of equity to annul an ordinance or to take over from the City and the police the problems of traffic regulation. Courts are equally without legal right or actual capacity to give effectual relief by any such usurpation of power.

This ordinance is an exercise by the City of strictly governmental power over streets, not an invasion of property rights or other personal rights in connection with, or under the guise of, exercise of governmental power. Cf. *Baltimore v. Himmelfarb*, 172 Md. 628, 192 A. 595; *Perellis v. Baltimore*, 190 Md. 86, 57 A. 2d 341; *Van Witsen v. Gutman*, 79 Md. 405, 29 A. 608, 24 L. R. A. 403; *Townsend v. Epstein*, 93 Md. 537, 49 A. 629, 52 L. R. A. 409, 86 Am. St. Rep. 441. It is designed to regulate and promote the use of these streets for the primary purpose of streets, *i.e.* for passage. An abutting owner has no vested right in stagnation of street traffic or in appropriation of a street for storage, *e.g.*, for

unlimited parking.

At the argument plaintiffs apparently abandoned their untenable contention that the ordinance may be held void because of the alleged baneful effects of increased traffic. They urge, however, that the ordinance is void by reason of "fraud" and arbitrary and capricious action in giving plaintiffs a hearing (before the Mayor, after passage of the ordinance by the Council) which (they say) was not a *bona fide* hearing because, by the expenditure of $400,000 on the cut-off, the City was already "irrevocably committed" to enactment of the ordinance. Strictly legislative action by a legislative body (as distinguished from action, by a body exercising delegated quasi-legislative and quasi-judicial power, which affects private rights in the public interest) is not invalid because it is taken without investigation or public hearing. The legislature, acting within its sphere, is presumed to know the needs of the people. *Townsend v. Yeomans,* 301 U. S. 441, 451, 57 S. Ct. 842, 81 L. Ed. 1210, opinion by Chief Justice Hughes. If a hearing, though not required, is actually held, possibly facts or evidence may be disclosed which tend to show that a statute or ordinance is invalid. *Cf. Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346; *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171, 60 A. 2d 743. But legislation, otherwise valid, cannot be pronounced arbitrary, capricious or fraudulent because it is dictated by the logic of events, to carry out a plan already followed for several years and to make use, instead of waste, of a $400,000 preparatory expenditure already made. It is inconceivable that anything of this tenor said by the Mayor, or the fact (if it be a fact) that plaintiffs were induced to attend an illusory meeting, could invalidate the ordinance.

*Decree affirmed, with costs.*