WORLD REALTY COMPANY, APPELLEE, V. CITY OF OMAHA ET AL., APPELLEES: JULIUS ORKIN ET AL., INTERVENERS, APPELLANTS.

FILED APRIL 16, 1925. No. 23011.

1. **Highways:** NUISANCE. Not every invasion of, or structure upon, a public highway is unlawful, but that they may legally exist, the authority therefor must have its ultimate source in the legislature of the state in whose jurisdiction the highway exists.

2. **Injunction.** One who seeks the extraordinary remedy of injunction must establish by competent evidence every controverted fact necessary to entitle the party to the relief to be granted.

3. **Nuisance:** INJUNCTION. A private person or corporation seeking the aid of equity to restrain a public nuisance must show some special injury peculiar to such person or corporation, aside from and independent of the general injury to the public. *Bischof v. Merchants Nat. Bank,* 75 Neb. 838.

4. **Municipal Corporations:** EASEMENTS: INJUNCTION. Where an abutting owner's easement of light, air and view over and from a public street is interfered with by a private structure extending into or within such street and, by reason of which, the owner suffers material injury peculiar to himself and aside from and independent of the general injury to the public, equity will protect such easement by injunction.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed, with directions.*

*Arthur F. Mullen* and *William H. Herdman,* for appellants.

*Gaines, Van Orsdel & Gaines, William Baird & Sons* and *Dana B. Van Dusen, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, THOMPSON and EVANS, JJ., and SHEPHERD, District Judge.

EVANS, J.

In this action the plaintiff and appellee (hereinafter called the plaintiff) sued for a decree enjoining the defendants, the city of Omaha and certain of its officers (hereinafter called the defendants), from interfering with the construction and maintenance of a canopy in connection with a theater building which, at the time of the commencement of this action, was being erected by the plaintiff. Julius Orkin and the Blank Realty Company, interveners and appellants (hereinafter called the interveners), after obtaining leave from the court so to do, each filed a separate petition of intervention. Issue being joined, the evidence was taken, and the court below found for the plaintiffs, made a final decree perpetually enjoining the defendants as prayed, and dismissed the petitions of the interveners. The interveners each prosecutes an appeal to this court to reverse the decree so entered. The city of Omaha and its officers do

not appeal and appear in this court in the character of appellees.

The facts out of which the controversy arose are as follows:

In the city of Omaha, Douglas street extends east and west, and Fifteenth street extends north and south, intersecting each other at right angles. The streets are 100 feet in width from lot line to lot line, and at their point of intersection are main thoroughfares of the city of Omaha, and the intersection is, approximately, the center of the moving picture business in the city. The sidewalk on the street over which the canopy was constructed is 17 feet in width from lot line to curb. The plaintiff, as tenant under a 99-year lease, occupies, on the northwest corner of the intersection, a parcel of land 132 feet by 110 feet, the latter frontage being on Douglas street, and at the time this controversy arose was engaged in the construction of a theater building upon said parcel of land, the same to cost upwards of $300,000. The intervener, Julius Orkin, occupies as a tenant, under a lease expiring in 1931 a parcel of land adjoining plaintiff's land on the west, with a south frontage on Douglas street of 22 feet and a depth of 132 feet, upon which premises is a four-story brick building of like frontage and occupied as a retail store. The first-story front of this building is of glass flushed with the north line of Douglas street, in which intervener Orkin displays at all times, for sale and advertising purposes, merchandise kept for sale in said building. There is also on the front of said building a large sign, and in the front of said building and extending south therefrom a vertical sign showing the intervener's name, the sign extending from the second floor to the top of the building. It does not appear that plaintiff's canopy seriously obstructs the show-windows of this intervener, but it would obscure to quite an extent the view from the street of said intervener's sign that is placed flat upon the front of his store. The intervener, the Blank Realty Company, occupies under a 99-year lease a parcel of ground 133 feet square located on the northeast corner

of the intersection of Douglas and Fifteenth streets.   Upon said premises the intervener has a theater building three stories in height recently constructed at a cost upwards of $300,000, and upon the front of said building intervener has placed and maintains lighting, illuminating, and advertising devices, the same being placed flat upon said building and representing an investment of several thousand dollars and which are maintained continuously, the cost thereof being a very considerable sum.   The canopy constructed by plaintiff extends along the south side of the building on Douglas street, having a length of 76 feet 6 inches, and projecting out over the sidewalk 15 feet, and at its lowest point being 10 feet 3 inches above the level of the sidewalk. Its construction is fire-proof and is entirely supported by cables attached to the building from which it projects.   The plans therefor provide for the lighting of the entrance to the theatre and the lobby from lights installed in the canopy, and for the lighting of the front of the building by means of lights installed in the roof of the canopy.   The effect of the canopy is to obstruct the view from and, to an extent, hide the fronts of the building of each of the interveners, Julius Orkin and Blank Realty Company.   On July 30, 1921, on application of plaintiff to R. E. Edgecomb, signing as "building inspector," a permit was issued for the construction of a three-story building.   This permit was a conditional permit and a letter of the "chief engineer" accompanying the permit called attention to the conditions. The conditions specially referred to, however, had to do with the structure inside the lot lines, and not to projections extending into the street.   The plans submitted at the time this permit was issued showed the canopy proposed to be constructed practically as the same now is.   On October 10, 1921, a permit was issued by R. E. Edgecomb, signing as "chief engineer in charge of the building department," purporting to authorize the construction of a canopy, and the canopy involved in this controversy is within the limitations fixed in this permit.   On October 17, 1921, the Blank Realty Company filed with the defendants, the commission

of the defendant city, a protest against the construction of the proposed canopy, alleging, among other reasons therefor, that if the canopy is constructed it will cause great and irreparable damage to the business and property of the company, and that the permit is unlawful, an invasion of property right of the company, and is "an attempt to give to private people a franchise and right to use a part of the streets" for private purposes, and requesting a revocation of the permit. Julius Orkin, the other intervener, at the same time filed a similar protest. On October 18, 1921, the following resolution was adopted by the city council:

"Resolved, that the permit granted by the building department upon October 10, 1921, to World Realty Company to erect a canopy or permanent awning over the sidewalk around the east two-thirds of lot seven, block one-hundred and six, Original City of Omaha, be revoked."

On October 20, R. E. Edgecomb, as "chief engineer of the building department" of the defendant city, notified the construction company, to whom the permit had been issued, of the resolution, and that the canopy could not be constructed. The resolution of revocation was passed without notice to the plaintiff and without a hearing at which plaintiff was represented. At that time no material part of the canopy had been constructed. The actual work on the canopy upon the ground was not commenced until about January, 1922. The work of construction was under an inclosed shed, and neither the defendant city nor either of the interveners had knowledge of its construction until in March, 1922.

The questions presented for decision are: (1) Was there a lawful authorization for the construction of the canopy in question? (2) Can the authorities of a metropolitan city authorize such a construction in a public street and by so doing deprive adjoining and adjacent abutting property owners of their right to light, air and view over such a street to the material damage of such owners?

Omaha is a city of the metropolitan class. Its charter is subject to the limits of the Constitution and laws of the

state. Const., art. XI, sec. 5. It is given authority and control over the streets and sidewalks to be exercised by ordinances. Comp. St. 1922, sec. 3489, subds. XII, XXI. Under this section the ordinance received in evidence was passed. There was a permit received in evidence which granted to the plaintiff the right to erect a three-story building on its property at the intersection of Douglas and Fifteenth streets in the city of Omaha, but such permit does not confer the right to construct a canopy out into the street. The fact that the plans had incorporated in them the proposed canopy in no way binds the city, as canopies are specially mentioned in the ordinance offered in evidence and require a special permit by a particular officer. The plaintiff recognized this fact, in that it subsequently applied for a permit to construct the canopy involved in the controversy, and without which the construction of the canopy could have subjected the person engaging in its construction to a prosecution for a violation of the very ordinance under which the plaintiff claims protection.

Not every invasion of or structure upon a public highway is unlawful, but that they may exist legally, the authority therefor must have its ultimate source in the legislature of the state within whose jurisdiction the highway exists. "The legislature of the state represents the public at large, and has full and paramount authority over all public ways and all public places." 1 Elliott, Roads and Streets (3d ed.) sec. 540. The legislature usually delegates this power to control and regulate streets to the local authorities. How far these powers extend in a given case must be determined from the charter or enactment. 1 Elliott, Roads and Streets (3d ed.) sec. 540; 2 Dillon, Municipal Corporations (4th ed.) sec. 656, and cases cited in note. But a city cannot contract away its power over streets when public good requires it to act. 2 Elliott, Roads and Streets (3d ed.) sec. 840, cases cited in note 82, and sec. 882; cases cited in Cooley, Constitutional Limitations (5th ed.) * 206 et seq.

The plaintiff seeks the extraordinary remedy of injunction, and to be entitled to the relief sought must establish each and every fact necessary to entitle it to the relief prayed for, and this includes a permit from the duly constituted authorities having jurisdiction over the subject-matter—in this case the construction of the canopy over sidewalks on Omaha's public street. The canopy in question, as to size, drainage, character of construction, and support, may be conceded to be within the limitations fixed by the ordinances, but was there a permit issued and granted by "the department or officer of the city in which or whom is vested by law or ordinance the authority to issue building permits?" If so, was such permit in force at the time this litigation was commenced? It is not made apparent by proof that the permit, under which it is claimed that the canopy is constructed, was granted "by the department or officer" designated in the ordinance to grant the permit. For the same reason it is uncertain whether the permit so relied upon was not legally revoked. The city of Omaha and its officers, the defendants in this action, have not appealed, and, as between the plaintiff and defendants, the decree of the district court stands unquestioned. This places upon the interveners the burden of establishing facts entitling them or one of them to the affirmative relief sought by them—a permanent injunction prohibiting the maintenance of the canopy on plaintiff's building—and the interveners' rights must rest upon injuries not common to the public, but such as are special and peculiar to them.

A canopy 76½ feet in length, 15 feet in width, not less than 10 feet above the sidewalk, located as described in the pleadings and evidence in this case, does affect injuriously the interveners' easement of light, air and view over the street into which it extends in a manner aside from and independent of the general injury to the public. The effect of the canopy is to utilize the property of the public for increasing the plaintiff's advertising and lighting facilities, and at the same time, to quite an extent, lessening

the effect of its competitor's efforts in the matter of advertising; that too, when the competitor is remaining strictly within the limits of its own property, or to state it differently, the canopy if allowed to remain as it is rewards one who unduly encroaches upon the streets and punishes that one who does not so encroach.

If we assume that the permit is without warrant or authority, or that it was legally revoked by the resolution of October 17 and the notice of October 20, then the case of *Bischof v. Merchants Nat. Bank,* 75 Neb. 838, is controlling and the canopy is a nuisance *per se* and should be abated. On the other hand, assume that the permit is sufficient and that it is effective and in force so far as to satisfy the ordinance in evidence, what is the rule?

No estoppel against a municipal corporation can arise from an act of such corporation or its officers done either in violation of law or without proper legal authority. *Philadelphia Mortgage & Trust Co. v. Omaha,* 63 Neb. 280; *Chapman v. City of Lincoln,* 84 Neb. 534; *Hibbard, Spencer, Bartlett & Co. v. City of Chicago,* 173 Ill. 91. The plaintiff acted with knowledge of the objections made to the erection of the canopy. If there is no estoppel as to the city, there can be none as to the interveners who were without knowledge of plaintiff's proposed action and moved promptly when action by them was called for.

"The consent of a city council to the erection of a structure for private use in a·public street creates no vested rights, nor can the owner enjoin the removal of the structure on the ground that it does not injure or obstruct any person, as the sole question in such case is, is the structure an encroachment upon the public street." *Hibbard, Spencer, Bartlett & Co., v. City of Chicago, supra.*

The foregoing case, it will be noted, is an action in which the municipality is the party, and is only applicable in the present case in so far as it relates to the question of a vested right in an encroachment upon the public highways.

There is conflict in the authorities as to whether a private individual can enjoin the maintenance of an obstruc-

tion in a public street on the sole ground that it affects his easement of light, air and view. There is one line of cases which holds to the rule that an "owner of a lot abutting on a city street has an easement in the light and air afforded by such a street, and is entitled to injunction to prevent the erection of a structure across the street which materially diminishes the supply of light and air to his lot, although such structure is authorized by municipal ordinance, because such an ordinance, made for the benefit of an individual, is invalid." *Townsend, Grace & Co. v. Epstein,* 93 Md. 537. See *Davis v. Spragg,* 72 W. Va. 672; *First Nat. Bank v. Tyson,* 133 Ala. 459; *Field v. Barling,* 149 Ill. 556; *Farrell v. Mayor of the City of New York,* 5 N. Y. Supp. 672; 2 Elliott, Roads and Streets (3d ed.) sec. 850. In Maryland a contrary view is expressed in an earlier case *Garrett v. Janes,* 65 Md. 260.

In *Field v. Barling, supra,* it is held: "Irreparable injury, as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages, only, often furnishes the best reason why a court of equity should interfere in a case where the nuisance is a continuing one."

In *Hoey v. Gilroy,* 129 N. Y. 132, the court refused to enjoin the maintenance of a structure 110 feet long, 19 feet wide (covering the whole width of sidewalk), supported by iron columns 3½ inches in diameter. The action was between the owner of the structure and the city. The matter of easement of light, air and view as between abutting owners was not involved. It should be born in mind, however, that this structure had originally been erected in conformity with an ordinance of the city, later, on the amendment of the ordinance, made to conform to the amended ordinance, and that there was no ordinance existing which made it an unlawful structure. The court concluded, so long as the city authorities had power to

authorize the erection and had exercised that power, that the court could not ignore that action, and that the common council can at any time abate such obstruction and prevent them in the future by repeal or modification of the ordinance.

In *Davis v. Spragg, supra*, it is held: "In addition to his right to use the highway in common with the general public, an abutting owner has also a special right to access thereto and to light, air and view therefrom. These are property rights and exist regardless of the ownership of the fee in the highway." But in such cases the private individual must show that he suffers serious injury differing from the general public. The latter case, after reviewing the cases of *First Nat. Bank v. Tyson, supra*, and *Bischof v. Merchants Nat. Bank, supra*, said: "We are inclined to think that these cases determine the law correctly, and that, if plaintiffs in this case had proved that the obstruction of the view from the street to the front of their buildings seriously and injuriously affected their actual or rental value, they would have been entitled to relief." The chancellor found they had failed to prove any such damage and this finding was approved by the reviewing court.

In *Krueger v. Wisconsin Telephone Co.*, 50 L. R. A. 298 (106 Wis. 96) it is held: "An unsightly telephone pole erected without right in a street, where it obstructs to some extent a show-window of the owner of the fee in that part of the street, constitutes a continuing trespass against which an injunction may be granted."

But in *Hay v. Weber*, 79 Wis. 587, from the same state, it is held that an owner of a store building cannot enjoin the construction of a bay window on an adjoining building extending 18 to 20 inches into the street, the damages because of obstructed view being too remote and speculative to constitute a cause of action. This case arose in Oshkosh and, from the opinion, there seems to have been a custom in that city permitting a display by the merchants of their merchandise upon the sidewalks in front of their places of

business and the bay window in question was apparently for such purpose, and this fact was considered by the court.

There is a group of cases arising out of covered excavations under some portion of the street or sidewalk, and in this class of cases the private individual has usually failed to prove injury peculiar to himself and aside from that suffered by the general public, and for that reason has failed to maintain his action. In this group is *Tiernan v. Thorp*, 88 Neb. 662; *Gleason v. Loose-Wiles Cracker & Candy Co.*, 88 Neb. 83; *State v. Armstrong*, 97 Neb. 343 (see opinion, Letton, J.).

Another line of cases hold, as in *Hay v. Weber, supra,* that the injury or damage flowing from the obstruction of view and prospect are too remote and speculative, and refuse injunctive relief. *Commonwealth v. First Nat. Bank,* 207 Pa. St. 255. This decision was by an equally divided court on a case of encroachment to the extent of 2 feet 9 inches in area, and on such divided opinion the decision of the court below was affirmed.

The case of *Mint Realty Co. v. Wanamaker,* 231 Pa. St. 277, involved an 8-foot extension, in conformity with a custom in the city, on a building 240 feet high, when the surrounding buildings were less than 100 feet high.

The case of the *City of Indianapolis v. Central Amusement Co.,* 187 Ind. 387, was an action instituted to compel the commissioner of buildings of that city to approve certain plans for a metal canopy over a sidewalk in front of the theater of the amusement company. The ordinance of the city provided: "Canvas awnings of the folding or hinged class or metal awnings may be erected beyond the building line, when the same are not less than 8 feet above the sidewalk." The plans presented for approval were within the provisions of the ordinance. The court held they were entitled to the relief asked.

*Gundlach v. Hamm,* 62 Minn. 42, holds to the rule that a private individual must show special damages before he can maintain an action to enjoin. In *Hawkins v. Sanders,*

45 Mich. 491, because no damage was shown, the bill was dismissed.

*State v. Wightman,* 78 Conn. 86, was a prosecution under an ordinance prohibiting the placing of signs so they extended into the street in excess of three feet and made violation thereof a misdemeanor. The ordinance was sustained under the act of the legislature authorizing it. Other cases cited by the parties to this action hold along the lines above indicated or else were not in point.

In *State v. Armstrong, supra,* there was an attempt by the relator to compel the mayor and council of the city of Lincoln to cause an "open area in the public sidewalk" to be closed. The issues raised were found in favor of the respondents and the proceedings dismissed. It does not appear that the relator was in any way injured, and the matter of allowing and regulating entrances to basements through sidewalks was held to be within the reasonable discretion of the city authorities, and that the case presented did not show an abuse of that discretion.

*City of Omaha v. Flood,* 57 Neb. 124, is relied upon by the appellees as establishing in this jurisdiction the rule: "That which the law authorizes is legal and cannot be enjoined as a nuisance." As has been hereinbefore pointed out, the assumption that the canopy in question was legally authorized is unwarranted and not necessarily involved in the decision of this case. However, the case is properly distinguished from the present one, in that the work complained of was that which tended to fit the street for public use and was done in a lawful manner, and that for the damage suffered by Flood there was an adequate remedy by an action for damage. In this case it is the effect of an act by a private individual which attempts to transfer a right from one individual to another without the consent of the latter.

The weight of authority is with the rule that, where an abutting owner's easement of light, air and view over and from a public street is interfered with by a private structure extending into or within such street, and, by reason

of which, such owner suffers material injury peculiar to himself and aside from and independent of the general injury to the public, equity will protect such easement by injunction. This court in the case of *Bischof v. Merchants Nat. Bank, supra,* recognized and announced the principle, and no good reason has been assigned, or is apparent, for a departure from or a modification thereof. The interveners do and would suffer such injury if the canopy is permitted to remain, and are entitled to have it abated. The decree of the trial court is therefore reversed and the case remanded, with direction to enter a decree in accordance with this opinion.

REVERSED.