YALE UNIVERSITY *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The public easement in a highway, as a creature of the common law, is not a static concept but one that, in every age and generation, is shaped by custom and common usage to meet the demands of public convenience and necessity, subject always to the limitation that the rights of the abutter in the fee of the highway be not materially impaired or restricted.

The public easement for travel and transportation requires that the highway remain open and unobstructed for such a height above its surface as to secure all the light, air and view necessary to provide and maintain a highway adequate and suitable for those purposes.

An abutter upon a highway, owning the fee thereto, has an equal right to the use of the highway with every member of the public, and such other rights of ownership in the fee as are not inconsistent with the public easement, among which may be included, by sufferance, custom or permit, the maintenance of slight or minor encroachments which do not materially interfere with the rights of the public, such as stepping stones, porches, signs, awnings, windows, areas, vaults and the placing of building material temporarily in the highway; but he cannot acquire a prescriptive right to privileges of this character, however long they may be continued.

An overhead bridge connecting the buildings of an abutter who owns the land on either side of a highway cannot be regarded as a slight or minor encroachment either upon the public easement, whether it interferes with travel and traffic or not, or upon the right of other abutters to light, air and view from the space over the highway, and, if erected without proper authority, would constitute a nuisance.

An abutter's easement of light, air and view over and from the

highway represents a development of the common law to meet changing circumstances and conditions. It is a property right, for a material injury to which the owner is entitled to compensation, and against interference with which he may invoke injunctive relief.

The power of control, regulation and maintenance of highways is vested primarily in the General Assembly which may delegate its exercise in whole or in part to the several municipalities, resume it at will, or redelegate it to another body.

By the charter of the city of New Haven, the board of aldermen is granted "sole authority over all streets and highways therein" and is invested with numerous powers and duties in connection therewith, including the obligation to keep "open and safe for public travel and free from encroachments or obstructions all streets and public highways" and "the regulation of any work or thing therein, whether temporary or permanent, upon or over the surface thereof." *Held* that this broad grant of authority, unlimited by delegations of power to other boards or officers, and connoting not only the power to prohibit but also the power to permit and control, conferred upon the board of aldermen the authority to grant permission to erect and maintain, as a "work" therein, an overhead bridge connecting the buildings of an abutter who owns land on either side of a highway, provided it does not unreasonably interfere with the public easement or materially injure other owners of land upon either side of the highway, and provided it is reasonable under all the circumstances of the particular case.

A license or permit to erect an overhead bridge, is revocable at the will of the board of aldermen, whenever public necessity or convenience so requires, while its use, however long continued, cannot ripen into a prescriptive right of maintenance.

Permission to erect such an overhead structure in congested centers of business over much-traveled streets could rarely, if ever, be sustained as a reasonable and valid exercise of public authority.

In the present case, Yale University, which, with the exception of one lot, is the owner of all the land on the east and west sides of High Street between Chapel and Elm streets, and the owner of the fee in High Street, sought a declaratory judgment as to its rights and privileges in the construction of an ornamental arch and bridge across High Street, connecting the existing building on the northeast corner of Chapel and High streets, known as the Art School, with a proposed fireproof addition thereto to be erected on the northwest corner. The arch and bridge would in no way interfere with travel and traffic or touch the ground at any point within the highway limits; it would cause no injury to any other owner of land

upon the highway, and in connection with the new building, it would contribute not only to the efficient operation of the school and the safety of its art collections, but also, in view of the beauty of its design and its utility in the development of the school, to the artistic enrichment of the entire community. *Held:*

1. That Yale University has no right, power or authority to construct the proposed bridge without permission from the board of aldermen.

2. That, under all the circumstances, including the custom and practice in this State of maintaining overhead structures in connection with industrial and manufacturing establishments, and in view of the public benefit to be derived from its architectural beauty and its educational and public utility, amounting to a public, or at least *quasi*-public, use, the proposed bridge must be held to be reasonable; and that the board of aldermen has the power to permit its construction.

3. That, having secured such permission, the University would be obliged to comply with the provision of the building ordinance of the city in carrying out the construction.

Argued April 22d—decided July 3d, 1926.

ACTION for a declaratory judgment as to the rights and powers of the plaintiff to erect an overhead bridge or arch across High Street in the city of New Haven, and as to the rights and powers of said city to authorize or permit its erection, brought to the Superior Court in New Haven County and reserved by the court (*Simpson, J.*), upon the admitted allegations of the complaint, for the advice of this court. *Superior Court advised that the board of aldermen and no other board, body or officer of the city has power to permit the erection and maintenance of such arch and bridge, and that the plaintiff has no right to erect and maintain such arch and bridge without the permission of the board of aldermen.*

The parties to the reservation stipulated as to the facts as follows: Yale University owns all of the land in fee on the east side of High Street, in the city and town of New Haven, between Elm and Chapel Streets, being the block bounded by High, Elm, College and

Chapel Streets, and the site of the Yale College Campus; it similarly owns in fee all of the land fronting on the west side of High Street from Elm to Chapel Street, except one lot, and all the land on the north side of Chapel Street between High and York Streets and west of High Street. It also owns in fee the highway known as High Street, subject only to the highway easement. Upon the land owned in fee by the University and on the northeast corner of the Yale College Campus and of Chapel and High Streets, there is situated the building known as the Yale Art School, owned and used by the University as a place of instruction for students in the fine arts, as an art gallery, and as a place for housing its collections of paintings and other artistic objects. It is the purpose and desire of the University to erect in the near future, directly across High Street from the art school building, on the northwest corner of Chapel and High Streets and extending along the north side of Chapel Street and the west side of High Street, an additional building for the use of the Yale School of the Fine Arts, the chief purpose of which will be to provide a fitting and safe art gallery and place for the safe keeping and exhibition of the present and future collections of the Yale School of the Fine Arts, and of such other collections as may be there kept and exhibited from time to time, as well as for the instruction and education of its students. Architects' drawings for the new art school building have been prepared and approved, and it is the purpose and desire of the University that this shall be a fitting companion building to its Harkness Memorial Quadrangle, situated on the west side of High Street further to the north.

An integral and important part of the plans and drawings of the architect for the new building consists of an ornamental overhead projection, arch and

bridge across High Street, about sixty-eight feet north from the north building line of Chapel Street, connecting the mezzanine and second stories of the existing art school building on the northeast corner of Chapel and High Streets with the proposed new building on the opposite side and the northwest corner of these streets. The purpose and objects of the proposed ornamental projection, arch and bridge are chiefly to promote the efficient and convenient operation of the old building and the proposed new building as one plant by one organization of the Yale School of the Fine Arts, and to present an exceedingly pleasing architectural scheme and effect. The distance from the highest point in the highway in the middle of the street to the bottom of this structure would be seventeen feet, and at the point where it crosses the outside lines of the sidewalks the clearance would be fourteen feet. This structure would in no wise interfere with travel or traffic, through, over and upon the surface of High Street by vehicles or by pedestrians, either on the sidewalks or in the street way, and it would in no wise interfere with any legitimate use of High Street as and for a highway, and no part of it would touch the ground within the highway limits at any point. Due to the age and manner of construction of the old building of the Yale Art School, the fire hazards and other risks to the collections and objects of art of the University housed therein are great, and it is one of the purposes and desires of the University that the proposed new building shall be of modern fire-proof construction, and a place where such collections and other future collections will be as safe as it is humanly possible to make them, and to that end to construct the new building as speedily as possible.

The proposed structure, together with the new art school building, if erected, will, with existing buildings

of the University in the immediate vicinity form a group notable for their architectural beauty, and add greatly to the architectural beauty of the city and to the usefulness of the University to the community of New Haven. The plaintiff University has caused to be duly filed an application to the board of aldermen of New Haven for an order or ordinance permitting the construction, erection and maintenance by the plaintiff of the proposed ornamental projection, arch and bridge. Doubts have arisen as to the rights and powers of the parties in the premises.

Bona fide questions arising upon these facts which require settlement, and upon which the advice of this court is desired, are as follows:

1. A declaratory judgment which shall declare whether or not the board of aldermen have the right, power and authority to permit the construction, erection and maintenance of the proposed ornamental projection, arch and bridge?

2. A declaratory judgment which shall declare whether or not Yale University, as the owner of the fee of the entire highway at the point in question and of the land on both sides thereof, has the right, power and authority to construct, erect and maintain the proposed ornamental projection, arch and bridge without permission from the aldermen, the city, or any officer, board or body connected therewith?

3. A declaratory judgment which shall declare whether or not any board, body or officer of the city, other than the board of aldermen, has any right, power or authority to permit the construction, erection and maintenance of such ornamental projection, arch and bridge?

*Frederick H. Wiggin,* for the plaintiff.

*Louis Feinmark,* for the defendant.

WHEELER, C. J. Yale University owns the fee to the land on either side of High Street in New Haven and seeks a declaratory judgment as to whether it has authority, or can be given authority, to build an ornamental arch or bridge from its old art school building on the east side of High Street to a new proposed art school building to be erected on the west side of High Street, being the northwest corner of High and Chapel Streets. It also owns the fee to High Street subject to an easement for highway purposes in the public. This easement gave the public, under the common law, the right to pass to and fro upon this street for every purpose of travel and traffic, and the right to move every kind of property over this street, in a reasonable manner, so long as this does not impose an additional servitude upon the fee, with the incidental right in the public to do all acts thereon necessary to keep it in repair and using therefor "the soil and materials upon it in a reasonable manner for the purpose of making and repairing it." *Peck* v. *Smith,* 1 Conn. 103, 132; *Imlay* v. *Union Branch R. Co.,* 26 Conn. 249.

The early common law conception of the extent of this public easement has grown with the public necessity to include, not only the surface and a depth sufficient to make and keep the surface in proper condition for travel, but so much of the highway beneath the surface as is required for public purposes, such as the laying of sewers, catch basins, drains, hydrants and pipes for conveying water, gas, electricity and telephone and telegraph wires. It also has come to include not alone the right of travel and transportation upon and over the highway but the right to erect poles thereon for public utilities and to string wires from pole to pole, together with the equipment upon the poles for carrying electric power, telephone and telegraphic wires. None of these uses of the surface above

or beneath the highway add a new servitude to the highway, or interfere, practically, with the fee of the abutter in the highway.

It has long since been recognized by user, and judicially, that this enlargement of the public easement exists through public necessity when the rights of the abutter in the fee of the highway have not been materially impaired or restricted. We say in *Canastota Knife Co.* v. *Newington Tramway Co.,* 69 Conn. 146, 157, 36 Atl. 1107: "The common law definition of the public right in a highway did not embrace in terms, but it did in spirit, its use by public authority for laying water-pipes, drains, cisterns or hydrants, from which to draw in case of fire; and gas-pipes, and as a site for public sign-posts, and pumps; and to that extent it has long been enlarged by practical construction." Again, at page 158, we find: "The common law of Connecticut has been shaped by common usage in Connecticut. We have left it to our common law to define the rights acquired by the public upon the establishment of a highway; and as common law is but another name for customary law, custom must determine, in case of doubt, how highway travel can best be facilitated." See also *Tiesler* v. *Norwich,* 73 Conn. 199, 202, 47 Atl. 161.

The easement for travel and transportation requires light, air and view, hence it includes so much of these as are necessary in order to provide an easement which is at once sufficient and suitable for every kind of reasonable travel and transportation over and upon the highway. To maintain a public easement of this character the highway must remain open and unobstructed, at least for such a height above the highway as will secure all the light, air and view required to provide and maintain a highway adequate and suitable for travel and transportation. *Gulick* v. *Hamilton,* 293 Ill.

126, 127 N. E. 383, 385; *Field* v. *Barling,* 149 Ill. 556, 37 N. E. 850; *World Realty Co.* v. *Omaha,* 113 Neb. 396, 203 N. W. 574. The case of *Canastota Knife Co.* v. *Newington Tramway Co., supra,* page 156, defines this easement and gives the explanation why it can never be static: "The best definition of a public easement is often that given by public use. A highway is a way over which the public at large have a free right of passage. It is constructed and maintained in their interest. This liberty of passage may always be exercised in such a manner as may, at the time, be customary and reasonable, having in view both the convenience of the public and the proprietary rights of the owners of the soil. As to what is reasonable under these limitations, every age, speaking by its common law, must of necessity judge by its own standard."

We pass from the consideration of the easement of the public in the highway to the consideration of the right of the abutting owner such as this University, having the fee to the highway. It has an equal right to the use of the highway with every member of the public, and such other rights of ownership in the fee as are not inconsistent with the public easement in the highway. *Opinion of the Justices,* 208 Mass. 603, 605, 94 N. E. 849. Sometimes by sufferance, sometimes by custom and sometimes by permit from the public body having control of the highway, the abutter enjoys certain privileges upon, or over or under the highway which are slight or minor encroachments upon the public easement such as stepping-stones, steps, porches, signs, awnings, windows, areas, vaults, and the placing of building material temporarily in the highway, which do not materially interfere with the right of the public to the enjoyment of its easement. *Newton* v. *New York, N. H. & H. R. Co.,* 72 Conn. 420, 427, 44 Atl. 813; *Mayor of Baltimore* v. *Nirdlinger,*

131 Md. 600, 102 Atl. 1014. Obstructions of this character are endured for the general convenience of the citizens; *Tiesler* v. *Norwich,* 73 Conn. 199, 202, 47 Atl. 161; and generally sanctioned. *Acme Realty Co.* v. *Schinasi,* 215 N. Y. 495, 109 N. E. 577; 3 McQuillin on Municipal Corporations, § 1317. The abutter cannot acquire a prescriptive right to privileges of this character, however long they be continued. "An adjoining landowner who maintains steps in the highway, without objection by the municipality, for many years, acquires no right to maintain them there. Such an owner would be obliged to remove them if they should become an obstruction to public travel, and, if they were removed or rendered useless in connection with a change of grade, this result to them would not be a damage to his land." *Rogers* v. *New London,* 89 Conn. 343, 349, 94 Atl. 364; *Mayor of Baltimore* v. *Nirdlinger,* 131 Md. 600, 102 Atl. 1014; *Union Institute for Savings* v. *Boston,* 224 Mass. 286, 287, 112 N. E. 637; *Dalton* v. *Great Atlantic & Pacific Tea Co.,* 241 Mass. 400, 135 N. E. 318; *State* v. *Kean,* 69 N. H. 122, 125, 45 Atl. 256; *Reimer's Appeal,* 100 Pa. St. 182. The erection of a structure over a highway connecting the buildings of an abutter on either side of the highway cannot be regarded as a slight or minor encroachment upon the right of public easement or the abutter's rights of property, which includes light, air and view from the space over the highway. *Townsend, Grace & Co.* v. *Epstein,* 93 Md. 537, 49 Atl. 629; *Gulick* v. *Hamilton,* 293 Ill. 126, 127 N. E. 383, 385. If one abutter can exercise this right all abutters may and as a result of the universal exercise of this privilege the public easement might be destroyed or largely impaired. If abutters may exercise this right without public control the danger to the traveler beneath from articles falling from this structure may be a very im-

minent one. The fire hazard to nearby buildings may be augmented and the danger of a conflagration increased and additional police protection be required. None of the authorities, so far as our research has discovered, sanction the right of an abutter to construct and maintain an unauthorized overhead structure across a highway whether it interferes with travel or traffic, or not. The public safety forbids the unauthorized exercise by the abutter of a right to build a bridge or arch across a highway. Without the assent of the duly constituted public officials having authority to grant such assent, any structure erected over a street by an abutter would be an encroachment upon the highway and a nuisance. The authorities which hold the granting of permission to erect such a structure beyond public authority, and those which support the public authority in granting such permission, would unite in holding an unauthorized structure of this character an obstruction to the public easement and therefore a nuisance. Maintenance of such a right in the abutting owner may result in a denial of the right of other abutters in their easement of light, air and view over and from the public highway, material injury to which cannot be inflicted without compensation, except by a violation of their constitutional rights, and for interference with these rights of easement injunction will lie in their behalf. *Story* v. *New York Elevated R. Co.,* 90 N. Y. 122; *Kane* v. *New York Elevated R. Co.,* 125 N. Y. 164, 26 N. E. 278; *Barnett* v. *Johnson,* 15 N. J. Eq. 481; *Dill* v. *Board of Education,* 47 N. J. Eq. 421, 20 Atl. 739; *Fitzgerald* v. *Barbour,* 5 C. C. A. 180, 55 Fed. 440; *Davis* v. *Spragg,* 72 W. Va. 672, 79 S. E. 652; *Field* v. *Barling,* 149 Ill. 556, 37 N. E. 850; *World Realty Co.* v. *Omaha,* 113 Neb. 396, 203 N. W. 574; *First National Bank* v. *Tyson,* 133 Ala. 459, 32 So. 144; *Perry* v. *Castner,* 124

Iowa, 386, 100 N. W. 84; *McCormick* v. *Weaver,* 144 Mich. 6, 107 N. W. 314; *Bischof* v. *Merchants Nat. Bank,* 75 Neb. 838, 106 N. W. 996; 3 McQuillin on Municipal Corporations, § 1321; 13 R. C. L. p. 144, § 126; 1 Lewis on Eminent Domain (3d Ed.) §§ 120, 121, 123. An unauthorized obstruction in a highway which unreasonably interferes with its lawful use as a highway is a public nuisance at common law. *State* v. *Merrit,* 35 Conn. 314; *People ex rel. Browning, King & Co.* v. *Stover,* 145 N. Y. App. Div. 259, 261, 130 N. Y. Supp. 92; *Field* v. *Barling,* 149 Ill. 556, 565, 37 N. E. 850; *Hausman* v. *Brown,* 201 Ala. 331, 77 So. 993; Elliott on Roads & Streets, Vol. 2, §§ 827, 828.

We have in the necessities of time due to changing conditions and circumstances, broadened the common law conception of the rights of the public and abutters in the highway. The right of easement in the abutter on the highway in the light, air and view over the space in the highway in front of his property which we herein recognize, is a part of the development of the common law. Yale University has no right, power or authority to construct the proposed structure without permission from the authorized public body having control of the highway. *Davis* v. *Spragg,* 72 W. Va. 672, 676; 3 McQuillin on Municipal Corporations, §§ 1317, 1333.

The next question we are to answer is, whether the city of New Haven is empowered to grant permission to the University to erect this structure. The control, regulation and maintenance of the highways of New Haven, as of any municipality in the State, are primarily, with the police power of the State, vested in the legislative branch of government—the General Assembly—and, subject to constitutional limitations and to the property rights of the abutting owner, its control is absolute. *Canastota Knife Co.* v. *Newington Tram-*

*way Co.,* 69 Conn. 146, 150, 36 Atl. 1107; *State* v. *Coleman,* 96 Conn. 190, 113 Atl. 385; *Bradley* v. *Degnon Contracting Co.,* 224 N. Y. 60, 67, 102 N. E. 89; *World Realty Co.* v. *Omaha,* 113 Neb. 396, 203 N. W. 574; McQuillin on Municipal Corporations, Vol. 1, § 227.

The State as trustee for the public may through its legislative branch delegate this power of control, in whole or part, to its several municipalities to act in this regard as its agent. Whatever power it has delegated it may resume, or redelegate to another body. *Winfield* v. *Public Service Com.,* 187 Ind. 53, 59, 118 N. E. 531, 533; McQuillin on Municipal Corporations, Vol. 1, § 228. Practical considerations have led the General Assembly to vest the general control over the highways in their communities in the municipalities of the State. Occasionally a part of this authority is conferred upon another public body; an example occurs in *Cullen* v. *New York, N. H. & H. R. Co.,* 66 Conn. 211, 222, 33 Atl. 910, where it was found that some part of the sole and exclusive control over the highways of New Haven had been vested, in the interest of the policy of safety in the operation of railways, in the railroad commissioners (now Public Utilities Commission). Section 132 of the charter of New Haven, Special Laws of 1899, p. 425, as amended by Special Laws of 1915, p. 220, provides: "Sec. 132. The City of New Haven shall be a highway district, and the board of aldermen shall have sole authority over all streets and highways therein, including sole authority to lay out, make, or order new highways and streets and to discontinue the same. No person shall open, within the limits of said city, any public or private way, except under the provisions of an order of said board of aldermen. Said board of aldermen is hereby authorized to order, lay out, construct, repair, and alter public squares, parks, streets, highways, sewers, gut-

ters, drains, bridges, and walks, except as herein otherwise provided, when and where, in the opinion of said board, the public good shall so require, and to order the paving, macadamizing, or other improvement of any street, alley, or highway within said city."

Section 137 (Special Laws of 1899, p. 428) gives to the court of common council (now board of aldermen) authority to open, improve, light and repair highways, to keep them open and safe for public use and travel and free from encroachments or obstructions, and power over the "regulation of any work or thing therein, whether temporary or permanent, upon or over the surface thereof." Similar power has been conferred upon the highway commissioner as to trunk lines, or State aid highways, in § 1 of Chapter 100 of the Public Acts of 1925, page 3867. The conferring upon the board of aldermen of the sole authority over all streets and highways in New Haven, together with an enumeration of the specific powers included under the broad power of sole authority, is a delegation of the legislative control over all the highways of New Haven, except in so far as that control was then or has since been vested in other public bodies or officials, as complete as language is apt to be used.

The board of aldermen was thus constituted "the general guardian of the public interests" in and over these highways. Section 132 is somewhat shortened from that usually found in our municipal charters, but it bears their meaning. New London passed an ordinance under similar charter authority which forbade the placing or keeping of any sign, projecting over any street or sidewalk except under specified conditions. Upon a prosecution for maintaining a sign over the street in violation of the ordinance, we sustained the ordinance. *State* v. *Wightman*, 78 Conn. 86, 61 Atl. 56. Necessarily we were required in reaching this con-

clusion to hold that under this broad charter power the municipality had the power to regulate and control obstructions above the highway. We find a similar holding in *Leitchfield Mercantile Co.* v. *Commonwealth,* 143 Ky. 162, 136 S. W. 639, where an indictment for maintaining a common nuisance by maintaining a building across an alley under a permit from the city council was dismissed, the permit being held to be void. The legislature had authorized the municipality to control its streets and alleys. From this the Court of Appeals held that the city council "may in its discretion authorize its maintenance or grant now or then, a permit for its construction, if it sees proper to do so." It is generally held that a structure such as an overhead bridge or arch erected across a street without authority by an abutter is a nuisance. As the public easement over the highways of New Haven included the space above them, so far at least as necessary to furnish and protect the air, light and view above them, the sole authority over the highways given to this municipality gave it authority and control over this space above them. The charter does not leave to doubtful construction the specification of what would be comprised within the term sole authority; it gives a detailed specification of the powers comprised within this general grant of power. Among them its grant to the board of aldermen of "the regulation of any work or thing therein, whether temporary or permanent, upon or over the surface thereof" is an express authority for the regulation of the space above the highways of New Haven. It is required to keep "open and safe for public travel and free from encroachments or obstructions all streets and public highways." Fulfilling its duty in this regard requires it to determine what structures are encroachments or obstructions on, and what are safe or otherwise, for

public travel. Regulation connotes in this connection the power to permit and control as well as to prohibit. If "thing" stood by itself, it might be construed to mean some such thing as a banner, flag, sign or portico. When to it the word "work," as a noun, is used, it must be construed in its only relevant sense in this section as some thing which is made or manufactured, such as an article or structure. By any "work" the legislature intended to include any sort of structure which may be erected over the highway, and hence across the highway, and by "thing" the intent was to refer especially to those temporary and incidental features to which we have adverted. Since we find no limitation upon this broad power delegated to this municipality by grants to other bodies or officers, the conclusion follows that this authority over the highways coupled with the power of regulating "any work or thing herein, whether temporary or permanent, upon or over the surface thereof," gave to the board of aldermen of New Haven the authority to grant permission to erect and maintain such a structure over this street. 3 McQuillin on Municipal Corporations, § 1341.

We next determine whether a grant of permission to erect the structure in question would be valid within the legislative power thus conferred. We test it by asking, will the exercise of this power unreasonably interfere with the public easement over this highway, or will it materially injure owners of land upon either side of this highway? The agreed facts of record differentiate this case from other cases dealing with structures erected over a highway. The structure to be erected will rest upon foundations set outside the highway and upon land of the abutting owner, the University, and no part of the structure will touch the highway. It will be erected at such height above the highway as in no wise to interfere with travel or traffic

upon its surface.  It will not interfere with the light, air or view of any owner of the land on either side of the highway.  It will not interfere with any legitimate use of the highway.  It will help bind together in a common use two of the buildings of a great university devoted to the fine arts and serving the double purpose of instruction to its students, and through its art gallery teaching, not alone its body of students, but the community in which it is located, to know, and feel and love the beautiful in art.  It will in this way render a public service to the people of the city of New Haven, and in a qualified degree to the people of the State.  It will provide an adequate place for the safe keeping in a modern fire-proof building of the present and future collections of the art treasures of the Yale School of the Fine Arts.

The proposed ornamental arch or bridge and the proposed new art gallery will be in architectural harmony with the Harkness Memorial Quadrangle located upon the west side of High Street to the north.  They will form a part of a group of buildings which will add greatly to the architectural beauty of New Haven and enlarge the usefulness of Yale University to that community.  If service like this be not a public use in the legal sense, it must be held to be at least a *quasi*-public use.  Purposes which educate, uplift and ennoble a community, should be esteemed of as great public good as the things which add directly to its wealth or give employment to its citizens.  The development and encouragement of the things of the spirit are more enduringly vital to the State than the development of its material resources.

In this case no abutting owner or other landowner can claim compensation for violated rights of property. No one of the public will suffer in his right to the public easement over this highway.  The city will not

be injured, but it and the entire community will be immeasurably and permanently benefited.

The license or permit to erect this arch or bridge will be revocable at the will of the board of aldermen whenever the public necessity or convenience requires, while its use, however long, will not ripen into a right of maintenance against the legislative will. The landowner on both sides, or different owners on either side, cannot erect a structure across a street without public authority. Under these circumstances there appears to be no valid reason why the grant by the board of aldermen of permission to erect this structure should be declared invalid any more than its authority to permit an awning to be hung across a sidewalk of the highway. Each is an exercise of control of the space above the highway. No constitutional provision is involved. When neither public nor private interest is materially affected, the exercise of its charter power by a city by granting permission to an owner upon both sides of the highway to build a structure across it depends upon what is reasonable (*People ex rel. Mather* v. *Marshall Field & Co.*, 266 Ill. 609, 618, 107 N. E. 864, 867), and that is to be tested by the standard of every age, as JUSTICE BALDWIN said in the *Canastota Knife Co.* case, "speaking by its common law." The practice throughout the State is evidenced by the allegations of paragraph sixteen of the complaint, which defendant admits as true:

"16. There are and have been for many years existing and maintained by private corporations and individual landowners in many towns in Connecticut, and especially in many towns where manufacturing establishments are located, many bridges or overpasses over and across highways, which are high enough so that they do not interfere with a free flow of traffic on the surface of the highways beneath them, but

which are used for private purposes and for purposes of direct passage and communication above and across such highways between lands and buildings owned by the same owners but situated on opposite sides of such highways, respectively."

While these admitted facts do not state whether these structures were erected with authority, they do tend to show what is customarily regarded in this day as reasonable. Whether the permit if authorized is reasonable will depend upon the circumstances of each case. In congested centers of business over much traveled streets, a permit to erect a bridge, passway or arch by abutting owners could rarely, if ever, be sustained as a valid reasonable exercise of public authority. *Kelty* v. *Minneapolis,* 157 Minn. 430, 196 N. W. 487; *Jorgensen* v. *Squires,* 144 N. Y. 280, 39 N. E. 373; *Bybee* v. *State,* 94 Ind. 443; 7 McQuillin on Municipal Corporations (Supplement) § 1341.

The authorities upon the principal point involved are in conflict. In 208 Mass. 603, 605, 94 N. E. 849, we find the opinion of the Justices of the Supreme Judicial Court given to the legislature of Massachusetts in response to certain submitted questions, one of which was this: "Second, Is it within the constitutional power of the legislature to enact a law conferring upon a city or town within this Commonwealth the power to grant permits or privileges to private individuals to erect structures which will bridge the public streets connecting premises owned on both sides of the street?" The answer given by the Justices was, "Yes, if the private individuals own all the land upon or over which the structures are to be erected." In *Kellogg* v. *Cincinnati Traction Co.,* 80 Ohio St. 331, 88 N. E. 882, a taxpayer sought to enjoin the construction of an overhead bridge about to be erected by a traction company, the owner of land abutting on opposite sides

of the street, for the purpose of carrying coal from its elevator on the north side of the street to its power house on the south side, under a permit from the city of Cincinnati which was revocable at the pleasure of the city. The petition was dismissed and the judgment on appeal sustained. It appeared that the supports of the bridge were not in the street, that it did not interfere with the light and air of adjoining owners, and that its erection would relieve a serious obstruction or interference with traffic in the street below. The case was one where no injury would occur to the adjoining owners, or to the public easement; on the contrary the public easement would be benefited.

In *Hotel Wisconsin Realty Co.* v. *Gross Realty Co.*, 184 Wis. 388, 198 N. W. 388, a lessee for ninety-nine years of hotel property bought land across a public alley from the hotel, and the city council issued to him a permit to erect an overhead bridge connecting the buildings on opposite sides of the alley. The court held: "Undoubtedly the plaintiff has the right to make such use of the alley adjoining the premises as will in no wise interfere with the public easement or burden the leasehold in excess of the conditions of the lease. Also the city council of Milwaukee had power to grant a permit to the plaintiff to erect a structure over the alley, if the same would not unreasonably obstruct the public use of the alley." While the court cites, further on, sections of the statutes of Wisconsin, the opinion does not indicate that the authority for the above proposition is found in these sections. This may be the fact, since this holding is at variance with that in *Tilly* v. *Mitchell & Lewis Co.*, 121 Wis. 1, 13, 98 N. W. 969, a case where the power of the council to grant to the defendant the right to bridge a street was in issue. The court declared: "It is impossible for us to perceive how it can be claimed that the coun-

cil had power to grant any such rights to any one in a public street. So long as it remains a street, it is reserved for public uses and for public uses alone, and the council has no power to devote any part of it to private uses, even though that part be merely a part of the space above the roadbed."

The case before us, as well as *Kellogg* v. *Cincinnati Traction Co.,* 80 Ohio St. 331, 337, 88 N. E. 882, could be supported upon their peculiar facts without conflicting with any of the cases denying the right to erect an overhead structure across a street. But with one feature of the broad underlying doctrine of these cases they cannot be reconciled. These cases could have been decided without reference to this principle, since in most there was no public authority for these erections, and in others the erections were made in such way as to constitute an encroachment upon the surface of the street. The principle asserted in the majority of these cases is that under no circumstances can a municipality, whether authorized or not, grant permission to erect such a structure over its streets "for merely private purposes."

An adjoining owner, in *Townsend, Grace & Co.* v. *Epstein,* 93 Md. 537, 555, 49 Atl. 629, sought an injunction to prevent the erection across a street of a passway connecting buildings of a manufacturing concern under authority of a municipal ordinance. It was found that this structure would materially interfere with the light and air of this owner. See also *Klinkert* v. *Racine,* 177 Wis. 200, 188 N. W. 72; *Field* v. *Barling,* 149 Ill. 556, 566, 37 N. E. 850; *Beecher* v. *Newark,* 64 N. J. L. 475, 479, 46 Atl. 166; *Davis* v. *Spragg,* 72 W. Va. 672, 79 S. E. 652; 13 R. C. L., p. 200, § 171; 2 Elliott on Roads & Streets (3d Ed.) §§ 896, 882; note, 23 L. R. A. (N. S.) 158, 159; note, 17 Amer. & Eng. Ann. Cas. 246.

We have already pointed out the rule of law of these authorities is applied to a set of facts quite different from those in *Kellogg* v. *Cincinnati Traction Co., supra,* or in the instant case, where we find as admitted facts that none of the property rights of adjoining owners will be injured, none of the public easement of passage over this highway materially interfered with and that the overhead structure will convenience and benefit the public. The weight of authority appears to be against the conclusion we have reached. Yet it must not be forgotten that no one of these cases has been determined upon the same facts as are present in the instant case. The rule of law we invoke gives ample protection to the public and to the adjoining owner while according to an abutter a right of encroachment upon the highway easement when found reasonable within the principles stated in this opinion and duly authorized by competent authority. This rule of law is based, as we think, upon sound reason and is not antagonistic to those fundamental principles underlying our own highway law. It makes the granting of such permits dependent upon their being both authorized and reasonable.

The answers to the questions propounded do not require an answer to the question, Is the University, in the event that the board of aldermen grant it permission to erect this structure, compelled to secure a permit from the inspector of buildings in accordance with the building ordinance (Chapter VI of the Ordinances of New Haven)? That there may not hereafter be any misconception upon this point, we answer, without discussion, that such a permit is required before the University can begin the erection of this structure. The board of aldermen determine, within the principles stated herein, whether the structure can be erected, while the inspector of buildings must see that

the plans and specifications of the structure comply with the building ordinance before approving of the same and issuing his permit, and thereafter supervise its erection so that it does not deviate from the plans and specifications.

The Superior Court is advised that we answer question A. yes, and questions B. and C. no.

No costs in this court to be taxed in favor of either party.

In this opinion the other judges concurred.