COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Jack TRIMBLE et al., etc., Appellees.

Court of Appeals of Kentucky.

May 23, 1969.

John B. Breckinridge, Atty. Gen., Don Duff, Jarvis Allen, Frankfort (Dept. of Highways), for appellant.

Clifford B. Latta, Prestonsburg, for appellees.

PALMORE, Judge.

The appellees, Greer-Ellison Coal Company and the trustees of the James Hatcher Estate, brought this action against the state highway department and certain of its officials for injunctive relief and damages. The relationship between the appellees is that the company has a coal lease from the Hatcher estate on some 6,000 acres of land just east of U.S. Highway 23 and the Big Sandy River in Floyd County. Their complaint is that the highway department has declined to issue a permit to the company for the construction of an overhead conveyor spanning Highway 23 between the Hatcher land on the east and the site of a railroad siding procured by the company on the west side of the highway and the river. Cf. KRS 177.106.

The trial court entered findings of fact, conclusions of law and an interlocutory judgment declaring the company entitled to the permit. The judgment was made appealable as authorized by CR 54.02, and the highway department appeals. Our conclusions are that the appellees are not entitled to the permit as a matter of right, that the highway department's action was not arbitrary, and that the conclusions of law and judgment are erroneous.

Despite a rather ample record, the facts are relatively simple. Beginning in 1964 the coal company spent or committed considerable sums of money incident to the establishment of a coal mine on the Hatcher estate property, which abuts the east side of Highway 23. Among other things, it made tests, acquired leases, negotiated a contract to sell its entire output to a power company, obtained a site across the river for a railroad siding, and advanced half the estimated costs of its construction. In June of 1966 the highway department conducted a public hearing at Prestonsburg to establish the location of a new four-lane highway under the federal Appalachian Highway Program. It was determined at the hearing that the corridor for the highway would, in this area, follow the course of Highway 23, and soon thereafter the highway department contracted with Carl Kroboth Engineers for the design. Pursuant to this contract the engineers on April 17, 1967, established a tentative alignment for the center line of the highway.

Meanwhile, on August 8, 1966, engineers representing the coal company initiated a discussion with representatives of the highway department for the purpose of obtaining an encroachment permit (KRS 177.106) for the construction of a conveyor over Highway 23 near the mouth of Ivy Creek and were advised to file an application showing the plan and location of the proposed structure. The coal company proceeded to complete its engineering plans and filed a formal application on February 20, 1967. There followed a series of meetings between the respective representatives of the coal company and the highway department, during the course of which a new or amended application was filed, but they culminated in a stalemate when the coal company refused to sign an agreement under which one of the conditions of the permit would require it to relocate the structure at its own expense when necessitated by the construction of the new highway.

This suit was filed on April 11, 1967. The complaint asked a mandatory injunction requiring the highway department to grant a permit for the construction of a bridge-conveyor over existing Highway 23 just north of the mouth of Ivy Creek and demanded money damages on the theory of

reverse condemnation for the reduction in value to the plaintiffs' property rights caused by the allegedly wrongful delay in issuing such a permit. The highway department, after moving for a dismissal, filed an answer in which, among other things, it stated its willingness to issue the desired permit on the condition of the plaintiffs' agreeing to remove the structure at their own expense upon reconstruction of the highway.

After the taking and submission of considerable evidence the trial court entered its findings of fact, conclusions of law and judgment declaring that the appellees are entitled to the permit and reserving action on the questions of injunctive relief and damages. The pivotal conclusions of law were that under Sections 13 and 242 of the Constitution of Kentucky the plans and preparations made by the appellees prior to the June, 1966, hearing had attained the status of a vested interest "which would justify compensation in the event that such projected plans were impaired," and "that the proposal of the Department of Highways to construct a four-lane highway across the subject property interfered with the plaintiffs' respective rights, use and ownership of the land in question, and placed a substantial burden on same."

■ An abutting owner does not, in our opinion, have a vested right to build a structure over a public highway.

"None of the authorities, so far as our research has discovered, sanction the right of an abutter to construct and maintain an unauthorized overhead structure across a highway whether it interferes with travel or traffic or not. The public safety forbids the unauthorized exercise by the abutter of a right to build a bridge or arch across a highway. Without the assent of the duly constituted public officials having authority to grant such assent, any structure erected over a street by an abutter would be an encroachment upon the highway, and a nuisance." Yale University v. City of New Haven, 104 Conn. 610, 134 A. 268, 272, 47 A.L.R. 667, 673 (1926).

■ Though a structure extending over a public way may not actually interfere with traffic or travel upon it, in which event it is not a nuisance, if it is placed there without public authority it is a purpresture. Leitchfield Mercantile Co. v. Commonwealth, 143 Ky. 162, 136 S.W. 639, 642 (1911).

■ It follows that the constitutional restrictions against the taking of property without just compensation have no application to this case. The only relevant constitutional provision is Section 2, which negates the existence and thus prohibits the exercise of arbitrary power. Perhaps also the equal protection clause of the 14th Amendment to the federal constitution could be involved under appropriate circumstances, but they are not presented in this instance.

It is probable, though we need not so decide, that in the due exercise of its police power the state could prohibit absolutely the erection of substantial structures over public highways. As it is, however, the legislature has delegated to the highway department the authority to grant permission under KRS 177.106, which reads:

"(1) Before any person shall proceed to cause or continue or allow to remain in existence any encroachment under, on or over any part of the right of way of a state highway he shall first obtain from the Department of Highways a permit so to do. Any encroachment heretofore or hereafter placed or allowed to continue or remain under, on or over any road which is found by the Department of Highways to be interfering in any way with the safe, convenient and continuous use and maintenance of such road shall upon thirty days notice to the person or to his chief agent by the Department of Highways be removed or relocated by such person at his own expense.

"(2) Whenever an order of the Department of Highways requires such removal or change in location of any encroachment from the right of way of a road and the person causing such encroachment or allowing same to continue or remain fails to remove or change location of same at his own expense to conform to the order within the time stated in the notice, the Department of Highways shall proceed to cause the encroachment to be removed; the expense thereby incurred shall be paid out of any money available therefor, and shall be charged against the person and levied and collected and paid into the State Treasury as provided by law."

It is the position of the appellees that since their plans and preparations preceded in time those of the highway department for the construction of a new highway along the course or corridor of the existing road, they should be entitled to a permit based on the existing right-of-way. They cite, not without justification, the fact that the highway department's plans are subject to change and to possible delay, from which it is argued that they should not be compelled to stand by and suffer a costly interruption for an indeterminate length of time. They contend also that if they are entitled to construct the overhead conveyor now, a reconstruction of the highway or construction of a new highway is not a condition under which KRS 177.106 would require them to remove or relocate it. Literally speaking, this latter construction might be correct [see, however, Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308, 312 (1954)], but the controversy does not reach that point. The question, as we see it, is whether the highway department has acted arbitrarily in refusing the permit unless the applicants agree to the conditions under which the department is willing to issue it now.

When the appellees applied for the permit the highway department knew it was going to acquire from the Hatcher Estate more right-of-way to accommodate the new or reconstructed highway. If the permit had been granted unconditionally, and the conveyor erected, one end of it or at least some of its supporting structure would have been located on the right-of-way to be acquired, thus subjecting the highway department to the possibility of having to pay for it or relocate it. Certainly this would have precipitated litigation as to whether KRS 177.106 does or does not apply to the expense of such removal under those circumstances. The evidence indicates that the anticipated cost of relocation, or the excess in cost of a conveyor built to span the proposed right-of-way over one built to span the existing right-of-way, would be quite substantial. No prudent business man, we think, would be expected to issue a license to use his property if it entailed the prospect of such a liability. And even though the relationship between an arm of government and its citizens is not in all respects the same as between citizens, government should not be denied the benefit of sound business practice and judgment.

We do not mean to say that vague or long-range plans for the future would justify a governmental unit in declining to exercise statutory authority to permit a reasonable use of its property. It becomes a question of degree. This particular case involved a currently active program. We hold that it was not and is not unreasonable for the highway department to condition the permit on the appellees' agreement to accommodate their plans to its plans.

The judgment is reversed with directions that the action be dismissed.

All concur.